[No. 33536-7-I. Division One. September 5, 1995.]

JAMES ADAIR, ET AL., *Individually and as Guardian, Appellants*, v. MITCHELL B. WEINBERG, M.D., ET AL., *Respondents*.

---

*J. Murray Kleist* and *Schroeter, Goldmark & Bender*, for appellants.

*Robert N. Gellatly, Jr.* and *Sherry H. Rogers, Gregory P.*

*Turner, Michael A. Patterson,* and *Lee, Smart, Cook, Martin & Patterson,* for respondents.

BECKER, J. — A small child survived emergency surgery but suffered impaired eyesight. Her parents alleged medical negligence. Trial of the claim ended in a defense verdict. The parents assign error to rulings made during the closing arguments.

We affirm the judgment in favor of the physician respondents on the two issues presented. First, an argument insisting the standard of care is exclusively as "expected by society" is misleading. The trial court properly sustained objection to it. Second, a defense argument that the standard of care is set exclusively by the medical community is equally misleading, but the Adairs did not adequately preserve the error for review.

The assigned errors do not implicate respondent Evergreen Hospital. The judgment in favor of Evergreen is affirmed separately for that reason.

Camille Adair, age two and one-half, went to an emergency room in 1985 with peritonitis, a life-threatening infection. Dr. Elizabeth Neuzil, a pediatric specialist, believed a bowel obstruction had caused the infection. After requesting transport to Children's Orthopedic Hospital so that Camille could have abdominal surgery, Dr. Neuzil attempted unsuccessfully to place an intravenous line (IV) to administer saline fluid. This task is difficult with a small child because the veins are so small. The attempt was unsuccessful. Camille deteriorated, becoming cyanotic and going into shock. On the way to Children's Hospital, she suffered cardiac arrest. The staff at Children's successfully resuscitated Camille by using an alternative procedure for

administration of fluids. The procedure, known as intraosseous infusion, involves inserting a needle through the outer surface of the thin bone below the patient's knee. Fluids enter into the bone marrow cavity and reach the bloodstream.

The Adairs' theory with regard to Dr. Neuzil was that she was negligent in failing to attempt intraosseous infusion in the emergency room. Dr. Neuzil had not received training in the procedure.

The jury heard about intraosseous infusion from a defense witness, Dr. Pearl O'Rourke. She acknowledged that the procedure was used routinely in certain locales during the 1940s. The use of intraosseous infusion "fell into disfavor" after that era, Dr. O'Rourke explained, in part because of inadequate equipment. As late as 1985, some physicians and hospital staff knew how to do it, but pediatricians did not routinely learn it. With improvements in the hardware available for placing an intraosseous line, and heightened interest in methods to resuscitate children, the standard began to change. By the time of trial in 1993, intraosseous infusion was recognized at Children's Hospital as an appropriate backup method to resuscitate children if attempts to place an IV failed.

Dr. O'Rourke gave her opinion that Dr. Neuzil was not negligent because the standard of care for a pediatric specialist in 1985 did not include the ability to do an intraosseous infusion. She testified she would not trust a physician untrained in the procedure to try it on Camille.

Instruction 14, adapted from WPI 105.02,[1] set forth the standard of care as "the degree of skill, care and learning expected of a reasonably prudent pediatric specialist in the State of Washington acting in the same or similar circumstances at the time of the care or treatment in question." The instruction originates in RCW 7.70.040(1):

> The following shall be necessary elements of proof that injury resulted from the failure of the health care provider to follow the accepted standard of care:

---

[1]WPI 105.02, 6 Wash. Prac. 510 (3d ed. 1989).

(1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances[.]

The meaning of the word "expected" in Instruction 14 became the focus of closing argument. The Adairs argued that the expectations of society set the standard of care. Defense counsel responded by arguing that the medical community sets the standard, not society:

Society does not set the medical standards in the State of Washington. Doctors and the medical community and the law set those standards, and if you or I, as non-medical people, were to try to set those standards, we would be inaccurate.

The Adairs did not object at this point. Defense counsel continued to comment on instructions in general and Instruction 14 in particular, and soon returned to the reason for expert testimony:

[Instruction No. 14] does not indicate in any way that society sets those standards. That is why you heard so many experts come in here and testify as to what the standards were in 1985, and that's the reason why we feel obligated to bring those experts in here, so that you can understand —

The Adairs objected:

Your Honor, I'm sorry, I just want to alert the Court that in regard to this particular part of the argument, we had a discussion about that in chambers about the question of the expectation in the instruction where we discussed that, and I want to preserve—I want the Court to preserve my objection to that.

The court noted the objection for the record. The Adairs did not request a curative instruction.

In rebuttal, the Adairs returned to their argument that the reference point for the standard of care was society's expectations. They suggested that defense counsel had misstated the law:

I want to tell you again that the standard of care under the law applicable to this case is . . . to exercise that degree of

skill and learning and care reasonably expected by society. That is the law, notwithstanding anything you have been told—

[Defense counsel]: Objection, Your Honor. Objection. There is nowhere that that is in any of the instructions.

THE COURT: Sustain the objection.

[Adairs' counsel]: But it's in the Supreme Court decision, Your Honor.

THE COURT: Ladies and gentlemen, of course, as I've indicated to you before, I am the giver of the law, I have given you the law in the instructions, and you have all taken an oath to follow the law as I have given it to you.

The court, on request, instructed the jury to disregard the above comments by the Adairs' attorney.

Following argument, the Adairs proposed a curative instruction on the standard of care, adding the words "by society" after "expected" in Instruction 14. The court refused to give the amended instruction.

The Adairs assign error to the rulings and remarks of the trial court described above.

■ ■ Conformance to the standard of the medical profession no longer unilaterally defines the standard of care in a medical negligence action. The standard of care is one of reasonable prudence, as the Supreme Court held in *Harris v. Robert C. Groth, M.D., Inc., P.S.*[2] The defendant physician in *Harris* argued that the word "expected" in RCW 7.70.040(1) means "expected by the medical profession."[3] The Supreme Court responded that "Nothing in the statute, however, suggests that this interpretation, rather than 'expected by society', is the proper reading."[4]

---

[2]*Harris v. Robert C. Groth, M.D., Inc., P.S.*, 99 Wn.2d 438, 442-43, 663 P.2d 113 (1983).

[3]*Harris*, 99 Wn.2d at 445.

[4]*Harris*, 99 Wn.2d at 445.

The court in *Watson v. Hockett*,[5] a 1986 case, confirmed that the Legislature had changed the standard from "expected by the medical profession" to that "expected by society."

The Adairs contend that "expected by society" is proper argument in view of *Harris* and *Watson*. We disagree. "That we may have used certain language in an opinion does not mean that it can be properly incorporated into a jury instruction."[6] Likewise, language taken out of the context of an appellate opinion may not serve as the theme of an argument that distorts the law. A fair reading of *Harris* and *Watson* is that *both* the medical profession and society play a role in establishing what is expected of a medical provider.

In *Richards v. Overlake Hosp. Medical Ctr.*,[7] the plaintiffs proposed an instruction incorporating a similar excerpt from *Harris*: " 'It is society and the patients to whom physicians are responsible, not solely their fellow practitioners.' "[8] The court held the proposed instruction incorrect because the law "does not permit a jury to base a standard of care on what it believes to be a prudent expectation of society or patients."[9]

The phrase "expected by society" is improper argument for the same reason. Out of context, it suggests that doctors must guarantee a result if society expects it. The court properly sustained the objection to the Adairs' argument and instructed the jury to disregard it.

The defense argument was also improper. After *Harris*, it is no more correct to say that doctors alone define the standard of care than to say that society does. "The standard of care actually practiced by members of the profes-

---

[5]*Watson v. Hockett*, 107 Wn.2d 158, 166, 727 P.2d 669 (1986).

[6]*Turner v. City of Tacoma*, 72 Wn.2d 1029, 1034, 435 P.2d 927 (1967).

[7]59 Wn. App. 266, 796 P.2d 737 (1990), *review denied*, 116 Wn.2d 1014 (1991).

[8]*Richards*, 59 Wn. App. at 277; *Harris*, 99 Wn.2d at 445.

[9]*Richards*, 59 Wn. App. at 277.

sion is evidential but not conclusive with regard to what constitutes reasonable prudence."[10]

■ Improper argument that is invited does not warrant appellate review unless there has been a request to the trial judge to give the jury a corrective instruction, except where the misconduct was so flagrant that no instruction would cure it.[11] Defense counsel pertinently responded to the "expectations of society" argument by emphasizing the expert testimony. When the defense argument went so far as to suggest, inaccurately, that society had *no* say in the matter, the Adairs could have asked the court on the spot to instruct the jury to disregard it. Instead, they merely noted their objection on the record with a reference to a chambers discussion, the content of which is unknown to us. The Adairs could have asked the court to redirect the jury to the accurate statement of the law in Instruction 14. Instead, they proposed a written instruction that was misleading because, like their argument, it defined the standard of care as "expected by society." The trial court did not err in refusing to give it. In the absence of a correctly worded curative instruction, we conclude the Adairs inadequately preserved the error arising from the improper defense argument.

The Washington Supreme Court Committee on Jury Instructions recently added the following paragraph to the pattern instruction on standard of care:

> The degree of care actually practiced by members of the medical profession is evidence of what is reasonably prudent. However, this evidence alone is not conclusive on the issue and should be considered by you along with any other evidence bearing on the question.[12]

Such an instruction would have cured any confusion engendered by the two misleading arguments in this case.

---

[10]*Van Hook v. Anderson*, 64 Wn. App. 353, 358, 824 P.2d 509 (1992).

[11]*See Kilde v. Sorwak*, 1 Wn. App. 742, 749, 463 P.2d 265, *review denied*, 77 Wn.2d 963 (1970); *see also Strandberg v. Northern Pac. Ry. Co.*, 59 Wn.2d 259, 264, 367 P.2d 137 (1961).

[12]WPI 105.02, 6 Wash. Prac. 95 (3d ed. Supp. 1994).

---

■ The court's rulings did not prevent the Adairs from arguing that a reasonably prudent pediatric specialist would have known how to use intraosseous infusion on Camille. Nor did the court comment on the evidence, as the Adairs claim. "An impermissible comment is one which conveys to the jury a judge's personal attitudes toward the merits of the case."[13] It is permissible to remind the jury that the court, not the lawyer, is the giver of the law.

Affirmed.

AGID and WEBSTER, JJ., concur.

---

[13]*Hamilton v. Department of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988).