244 P.3d 924 (2010)
Tanya GREGOIRE, guardian for the person and estate of Brianna Alexandra Gregoire, a minor, and as personal representative for Edward Albert Gregoire, deceased, Petitioner,
v.
CITY OF OAK HARBOR, a municipal corporation, Respondent,
Richard Wallace, and his marital community; Benjamin Slaman, and his marital community; John Dyer and his marital community; Raymond Payeur and his marital community; Steven Nordstrand and his marital community; William Wilkie, and his marital community, Defendants.
No. 81253-5.
Supreme Court of Washington, En Banc.
Argued May 26, 2009.
Decided December 2, 2010.
*925 James Wilson Kytle, Mary Ruth Mann, Mann & Kytle, P.L.L.C., Seattle, WA, for Petitioner.
Robert L. Christie, Jason Marc Rosen, Christie Law Group, P.L.L.C., Seattle, WA, for Respondent.
Bryan Patrick Harnetiaux, Spokane, WA, George M. Ahrend, Ahrend Law Firm, P.L.L.C., Moses Lake, amicus counsel for Washington State Association for Justice Foundation.
SANDERS, J.
¶ 1 Shortly after police arrested Edward Gregoire (Gregoire), he displayed a range of unstable behavior, including thrashing violently, tussling with officers, crying, making irrational statements, and asking officers to shoot him. Roughly half an hour after transporting Gregoire to the Oak Harbor jail, officers found Gregoire hanging by his neck from a ventilation grate. Gregoire died soon thereafter. Tanya Gregoire (Ms. Gregoire), personal representative of Gregoire's estate, sued Oak Harbor for negligence in his death.
¶ 2 During a jury trial, the court read instructions on assumption of risk and contributory negligence, over plaintiff's objections. The jury found Oak Harbor negligent, but that its negligence was not the proximate cause of Gregoire's death. On appeal the Court of Appeals affirmed the trial court, holding the jury instructions did not prejudice Ms. Gregoire's case. We now reverse the Court of Appeals. Because jailors owe a special duty of care to their inmates, jury instructions regarding assumption of risk and contributory negligence are inappropriate in cases of inmate suicide.

FACTUAL AND PROCEDURAL HISTORY
¶ 3 In December 1995 Washington State Trooper Harry Nelson arrested Gregoire on outstanding misdemeanor warrants. After handcuffing Gregoire, Nelson placed him in a patrol car for transport to the Oak Harbor jail. During transport Gregoire kicked and *926 kneed the protective shield between the front and rear seats of the patrol car. Between violent bouts, Gregoire descended into despondency, at one point condemning his friends because, "I take one step forward and my friends take me two steps back." Concerned that Gregoire might return to violence at the jail, Nelson called dispatch to have another officer meet the patrol car there. State Trooper Scott Wernecke waited outside.
¶ 4 When the patrol car arrived at the jail, Nelson unbuckled Gregoire's seat belt, allowing Gregoire to step out of the patrol car. As Nelson bent down to retrieve Gregoire's hat from the car's passenger compartment, Gregoire broke free and ran from the troopers. Nelson grabbed Gregoire's shirt, tearing it, and Gregoire fell to the ground. Nelson and Wernecke forcibly restrained him. Gregoire reportedly screamed, "Why don't you just shoot me, please just shoot me," as the troopers carried a writhing Gregoire into the jail. Clerk's Papers (CP) at 628. Oak Harbor Police Officer William Wilkie aided the troopers by fetching plastic flex cuffs to restrain Gregoire's legs. Wernecke struck Gregoire on the thigh with his collapsible baton to halt Gregoire's kicking. Inside the jail, officers strapped Gregoire into a restraint chair in a holding cell. Over the next few minutes, Gregoire reportedly calmed down enough for officers to unstrap him from the restraint chair and remove the flex cuffs. They transported Gregoire to a regular cell.
¶ 5 Jail officials did not administer any mental or physical health screening before leaving Gregoire alone in the cell. Minutes later a jail official observed Gregoire crying. Approximately 10 minutes after the official saw Gregoire crying, an officer found him hanging from a bed sheet strung through the cell's ventilation grate. The officer called for help using the jail intercom and panic alarm. The officer ran to his desk to get a key to Gregoire's cell and a pair of scissors to cut him down. Several Oak Harbor police officers responded to the alarm. One called for an ambulance on his radio. Two responding officers checked Gregoire's pulse and breathing, but observed neither. None of the officers administered CPR (cardiopulmonary resuscitation), even though it had been 5 to 10 minutes since Gregoire was last seen alive in the cell. When paramedics arrived, they detected warmth in Gregoire's body, and began CPR. After 15 or 20 minutes, the paramedics noticed a faint carotid pulse. CPR continued for approximately 25 minutes as paramedics transported Gregoire to the hospital. At the emergency room, doctors designated Gregoire's condition a "premorbid state." Doctors pronounced Gregoire dead shortly thereafter.
¶ 6 In 1998 Ms. Gregoire, acting as guardian ad litem for Gregoire's minor child, Brianna Gregoire, and as personal representative of Gregoire's estate, brought suit in the United States District Court for the Western District of Washington. Ms. Gregoire asserted three civil rights claims, under 42 U.S.C. § 1983, and state law claims of negligence and wrongful death against the city of Oak Harbor and the various individual officers and jailors who interacted with Gregoire. On October 5, 2001 Judge Lasnik dismissed Ms. Gregoire's section 1983 and punitive damages claims, as well as the negligence claims against Nelson and Wernecke. Judge Lasnik declined to dismiss the remaining state law claims, ruling the parties had not substantively addressed the issue of supplemental jurisdiction. On May 6, 2002 Judge Lasnik declined to exercise supplemental jurisdiction and dismissed without prejudice the remaining negligence claims.
¶ 7 On May 30, 2002, Ms. Gregoire filed suit in Island County Superior Court, alleging wrongful death, state constitutional violations, civil rights claims, and negligence. Judge Alan R. Hancock dismissed the federal claims based on res judicata and dismissed the state constitutional claims for lack of a private cause of action. On June 12, 2003 Judge Hancock issued a letter decision denying Oak Harbor's motion for summary judgment on the remaining negligence claims.
¶ 8 In May 2006, a jury trial commenced before Judge Hancock on the wrongful death claim. Ms. Gregoire contended Oak Harbor negligently failed to satisfy its duty to protect Gregoire. Over Ms. Gregoire's objection, the trial court allowed Oak Harbor to assert affirmative defenses of assumption of *927 risk and contributory negligence[1] and instructed the jury on those theories. Oak Harbor also defended on two different proximate-cause theories, one of which rested on the affirmative defenses.
¶ 9 On May 31, 2006, the jury returned a verdict for Oak Harbor, finding that the city acted negligently, but its negligence was not a proximate cause of Gregoire's death. Ms. Gregoire appealed the verdict to the Court of Appeals, Division One, which affirmed. Ms. Gregoire argued that where a special relationship creates a special affirmative duty of care, assumption of risk does not apply. The Court of Appeals agreed the custodial relationship between jailor and inmate constitutes a special relationship but rejected the claim because Ms. Gregoire had not cited authority for the proposition that assumption of risk does not apply. Gregoire v. City of Oak Harbor, noted at 141 Wash.App. 1016, 2007 WL 3138044, at *4 (citing State v. Young, 89 Wash.2d 613, 625, 574 P.2d 1171 (1978)).
¶ 10 Ms. Gregoire filed a motion for reconsideration, which the Court of Appeals denied. She then petitioned this court for review, which we granted to determine whether the trial court erred by instructing the jury on assumption of risk and contributory negligence defenses in a case alleging negligent failure to prevent an inmate's suicide while in jail custody. Gregoire v. City of Oak Harbor, 164 Wash.2d 1007, 195 P.3d 86 (2008). We answer in the affirmative. When a special relationship forms between jailor and inmate, sparking a duty for the jailor to protect the inmate from self-inflicted harm, the defenses of assumption of risk and contributory negligence are inappropriate. In a claim of negligence stemming from inmate suicide, giving these instructions necessarily results in prejudicial error. We reverse the Court of Appeals and remand for a new trial consistent with this opinion.

STANDARD OF REVIEW
¶ 11 We review jury instructions de novo, and an instruction containing an erroneous statement of the law is reversible error where it prejudices a party. Cox v. Spangler, 141 Wash.2d 431, 442, 5 P.3d 1265, 22 P.3d 791 (2000). Jury instructions are sufficient if "they allow the parties to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied." Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995). The court reviews a challenged jury instruction de novo, within the context of the jury instructions as a whole. State v. Jackman, 156 Wash.2d 736, 743, 132 P.3d 136 (2006).

ANALYSIS

I. Jailors owe inmates an affirmative duty, which cannot be nullified by an inmate assuming the risk of death by suicide

¶ 12 Washington courts have long recognized a jailor's special relationship with inmates, particularly the duty to ensure health, welfare, and safety. In Kusah v. McCorkle, 100 Wash. 318, 325, 170 P. 1023 (1918), this court acknowledged that a sheriff running a county jail "owes the direct duty to a prisoner in his custody to keep him in health and free from harm, and for any breach of such duty resulting in injury he is liable to the prisoner or, if he be dead, to those entitled to recover for his wrongful death." The duty owed "is a positive duty arising out of the special relationship that results when a custodian has complete control over a prisoner deprived of liberty." *928 Shea v. City of Spokane, 17 Wash.App. 236, 242, 562 P.2d 264 (1977), aff'd, 90 Wash.2d 43, 578 P.2d 42 (1978); see also Caulfield v. Kitsap County, 108 Wash.App. 242, 255, 29 P.3d 738 (2001). In Shea, which involved a municipal jail, the court noted this duty of providing for the health of a prisoner is nondelegable. 17 Wash.App. at 242, 562 P.2d 264.
¶ 13 The legislature has subjected municipal jails to regulation and public duty. Local governments operating jails must adopt standards "necessary to meet federal and state constitutional requirements relating to health, safety, and welfare of inmates and staff...." RCW 70.48.071. Administrative regulations require Washington jails to perform suicide screening and suicide prevention programs. See former WAC 289-20-105, -110, -130, -260 (1981). In jury instruction 13, the trial court recognized Oak Harbor's "duty to provide for the mental and physical health and safety needs of persons locked in the jail." CP at 39. Oak Harbor did not object to the instruction.[2]
¶ 14 We have recognized that "the general rubric `assumption of risk' has not signified a single doctrine but rather has been applied to a cluster of different concepts." Kirk v. Wash. State Univ., 109 Wash.2d 448, 453, 746 P.2d 285 (1987). Four varieties of assumption of risk operate in Washington: (1) express, (2) implied primary, (3) implied unreasonable,[3] and (4) implied reasonable assumption of risk. Id. The first two types, express and implied primary assumption of risk, arise when a plaintiff has consented to relieve the defendant of a dutyowed by the defendant to the plaintiffregarding specific known risks. Id. The remaining two types apportion a degree of fault to the plaintiff and serve as damage-reducing factors. Id. at 453-54, 457-58, 746 P.2d 285; Scott v. Pac. W. Mountain Resort, 119 Wash.2d 484, 497-99, 834 P.2d 6 (1992). Express and implied primary assumption of risk share the same elements of proof: "The evidence must show the plaintiff (1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk." Kirk, 109 Wash.2d at 453, 746 P.2d 285. Implied primary assumption of risk is a complete bar to recovery for the risk assumed. Dorr v. Big Creek Wood Prods., Inc., 84 Wash.App. 420, 425, 927 P.2d 1148 (1996). Here, the trial court instructed the jury on the elements of implied primary assumption of risk,[4] permitting Oak Harbor to assert the complete defense. We note that the trial court confusingly instructed the jury that Gregoire's assumption of risk would relieve Oak Harbor of its duty of care, but subsequently instructed jurors on how to apportion fault if they concluded Gregoire assumed the risk. See CP at 46-47 (Jury Instructions 20-21).
¶ 15 Whether jury instructions regarding assumption of risk and contributory negligence apply to suits alleging negligence in jail suicides is a matter of first impression for this court. Other jurisdictions have tackled assumption of risk comprehensively on similar facts, and we find the reasoning from the Indiana Supreme Court persuasive. In Sauders v. County of Steuben, 693 N.E.2d 16, 19 (Ind.1998), the court refused to apply assumption of risk and contributory negligence in a jail suicide case to "completely obviate the custodian's legal duty to protect its detainees from that form of harm." The Sauders *929 court relied, in part, on the Seventh Circuit Court of Appeal's reasoning in Myers v. County of Lake, 30 F.3d 847, 853 (7th Cir.1994). In Myers, which involved a juvenile delinquent's custodial suicide attempt, the court stated that "[a] duty to prevent someone from acting in a particular way logically cannot be defeated by the very action sought to be avoided." Id.
¶ 16 This court has analyzed express releases seeking to immunize a defendant for negligent breach of a duty imposed by law and found that these violate public policy. See Wagenblast v. Odessa Sch. Dist. No. 105-157-166J, 110 Wash.2d 845, 758 P.2d 968 (1988) (invalidating on public policy grounds preinjury releases required of students as a condition for participating in interscholastic athletics); Vodopest v. MacGregor, 128 Wash.2d 840, 913 P.2d 779 (1996) (invalidating on public policy grounds preinjury releases to the extent they exculpate medical research facilities for negligence in performance of research). In Wagenblast we recognized courts "are usually reluctant to allow those charged with a public duty, which includes the obligation to use reasonable care, to rid themselves of that obligation by contract." 110 Wash.2d at 849, 758 P.2d 968. It flows logically that this court is even more reluctant to allow jailors charged with a public duty to shed it through a prisoner's purported implied consent to assume a risk, especially in a context where jailors exert complete control over inmates.
¶ 17 The trial court erred by allowing Oak Harbor, a municipality that was sued for failing to carry out its duty to provide for the health, welfare, and safety of an inmate, to raise the complete defense of implied primary assumption of risk. In the case of inmate suicide, we find the implied nature of the purported assumption of risk markedly inappropriate. Allowing Oak Harbor to invoke assumption of risk effectively eviscerated the city's duty to protect inmates in its custody. The jail cannot cast off the very duty with which it is charged through a violation of that duty.

II. Jailor's special duty to inmates includes protecting against suicide, to which contributory negligence cannot be a defense

¶ 18 In jury instruction 19, the trial court stated, "Contributory negligence is negligence on the part of a person claiming injury or damage that is a proximate cause of the injury or damage claimed." CP at 45. Instruction 6 provided, "Defendant further claims that Mr. Gregoire was contributorily negligent and assumed the risk of death when he hanged himself, and therefore his own conduct was the sole proximate cause of his death." CP at 32. The trial court also instructed the jury that Oak Harbor bore the burden of proving "the negligence of Mr. Gregoire was the proximate cause of his own death and of any damage to his estate and damage to his daughter, Brianna Gregoire, and was therefore contributory negligence." CP at 35 (Jury Instruction 9).
¶ 19 As outlined above, jailors have a special relationship with inmates, creating an affirmative duty to provide for inmate health, welfare, and safety.[5] In other special-relationship contexts, Washington courts have found this duty extends to self-inflicted harm. In Hunt v. King County, 4 Wash.App. 14, 22-23, 481 P.2d 593 (1971). the Court of Appeals upheld a negligence verdict against a hospital for failure to protect a patient from attempted suicide. The Hunt court indicated:
Such a duty [to safeguard] contemplates the reasonably foreseeable occurrence of self-inflicted injury whether or not the occurrence is the product of the injured person's volitional or negligent act.... Any other rule would render the actor's duty meaningless. The rule would in the same breath both affirm and negate the duty *930 undertaken or imposed by law. The wrongdoer could become indifferent to the performance of his duty knowing that the very eventuality that he was under a duty to prevent would, upon its occurrence, relieve him from responsibility.
Id. In a case involving a school district, we recently held the defense of contributory negligence is inappropriate against a 13-year-old student in a tort action for sexual abuse by her teacher. Christensen v. Royal Sch. Dist. No. 160, 156 Wash.2d 62, 71, 124 P.3d 283 (2005). In the case of suicide, a similar principle applies to the jailor-inmate relationship, even when the inmate is not a minor. Once a jailor forms a special relationship with an inmate, contributory negligence cannot excuse the jailor's duty to protect the inmate, even from self-inflicted harm. To hold otherwise would gut the duty.[6]
¶ 20 In cases of jail suicide, other jurisdictions agree the existence of a duty to protect should forgive the injured party's alleged contributory negligence. Again, in Sauders, the Indiana Supreme Court said,
custodial suicide is not an area that lends itself to comparative fault analysis. As already noted, the conduct of importance in this tort is the custodian's and not the decedent's. Further, it is hard to conceive of assigning a percent of fault to an act of suicide.... A comparative balance of "fault" in a suicide case would seem to risk random "all or nothing" results based on a given jury's predilections.
693 N.E.2d at 20.[7] Similarly, the Oregon Court of Appeals rejected contributory negligence as a defense to an attempted jail suicide, concluding that "the acts which plaintiff's mental illness allegedly caused him to commit were the very acts which defendant had a duty to prevent, and these same acts, cannot, as a matter of law constitute contributory negligence." Cole v. Multnomah County, 39 Or.App. 211, 592 P.2d 221, 223 (1979) (citing Vistica v. Presbyterian Hosp. & Med. Ctr. of S.F., Inc., 67 Cal.2d 465, 432 P.2d 193, 62 Cal.Rptr. 577 (1967); Hunt, 4 Wash.App. 14, 481 P.2d 593). The Oregon court noted that even if the plaintiff was not mentally ill, or if corrections officials were reasonably unaware of any illness, for defendants to prevail they would have to prove they were not negligent, not that plaintiff was contributorily negligent. Id.
¶ 21 More recently, the Supreme Court of Minnesota held that a jury should not determine, compare, or apportion fault on the part of an inmate who committed suicide while in custody because of the duty owed to protect him from self-inflicted harm. Sandborg v. Blue Earth County, 615 N.W.2d 61, 65 (Minn.2000). The Sandborg court reasoned:
"The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from liability.... To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity."
Id. (quoting RESTATEMENT (SECOND) OF TORTS § 449 cmt. b (1965)).[8]
*931 ¶ 22 We find the reasoning from the above-referenced opinions persuasive. The trial court erred by instructing the jury on contributory negligence because the injury-producing acthere, the suicideis the very condition for which the duty is imposed. The jail's duty to protect inmates includes protection from self-inflicted harm and, in that light, contributory negligence has no place in such a scheme.
¶ 23 The concurrence/dissent cites Bailey v. Town of Forks, 108 Wash.2d 262, 737 P.2d 1257, 753 P.2d 523 (1987), to assert contributory negligence should apply unless the plaintiff shows the jail assumed the inmate's duty of self-care. Concurrence/dissent at 934-35.[9]Bailey does not apply to the facts of this case. Bailey discusses exceptions to the public duty doctrine, not contributory negligence. We have described the public duty doctrine to require "`for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (i.e., a duty to all is a duty to no one).'" Bailey, 108 Wash.2d at 265, 737 P.2d 1257, 753 P.2d 523 (quoting J & B Dev. Co. v. King County, 100 Wash.2d 299, 303, 669 P.2d 468 (1983), overruled on other grounds by, Taylor v. Stevens County, 111 Wash.2d 159, 759 P.2d 447 (1988)). Under Bailey, if no duty "run[s] to the injured plaintiff from agents of the municipality," there is no liability at all. Id. at 266, 737 P.2d 1257, 753 P.2d 523. The concurrence/dissent states: "Unless the plaintiff establishes an assumption of his duty of self-care, a jury should not be foreclosed from considering comparative fault." Concurrence/dissent at 935. In other words, if the plaintiff does not show that the jail assumed the duty of self-care, the jury can entertain comparative fault. That is wrong, even under Bailey. Bailey says that if the plaintiff does not show that the jail assumed the duty of self-care, the plaintiff cannot sue at all. Bailey's test does not permit comparative negligence; it serves as a wholesale bar to recovery. Bailey's all-or-nothing approach does not apply. Moreover, while I do not subscribe to the concurrence/dissent's view that contributory negligence applies unless the plaintiff proves that the jailor assumed the inmate's duty of self-care, that duty would nonetheless be assumed through constructive notice in jail suicides generally and certainly for Gregoire, who asked officers to shoot him. Jail suicides are hardly infrequent events. They are eminently foreseeable, if not expected. Corrections employees are fully aware of the propensity of prisoners to take their own lives. Reams of literature have been written on the topic. For example: "Suicide is often the single most common cause of death in correctional settings. Jails, prisons and penitentiaries are responsible for protecting the health and safety of their inmate populations, and the failure to do so[] can be open to legal challenge." WORLD HEALTH ORG., PREVENTING SUICIDE IN JAILS AND PRISONS 1 (2007). "[P]re-trial detainees have a suicide attempt rate of about 7.5 times, and sentenced prisoners have a rate of almost six times the rate of males out of prison in the general population." Id. at 3.
¶ 24 Here, the jury found that Oak Harbor negligently failed to fulfill its duty to protect Gregoire. However, the jury concluded that the city's negligence was not the proximate cause of Gregoire's death. It seems likely the jury reached this verdict because the trial court described contributory negligence in a way that bore directly on proximate cause, an issue with which the jury *932 struggled.[10] Jury instruction 6 read, "Defendant further claims that Mr. Gregoire was contributorily negligent and assumed the risk of death when he hanged himself, and therefore his own conduct was the sole proximate cause of his death." CP at 32. Instruction 19 added, "Contributory negligence is negligence on the part of a person claiming injury or damage that is a proximate cause of the injury or damage claimed." CP at 45. The interplay between these instructions[11] supports the finding that if Gregoire assumed the risk of death and contributed negligently when he hanged himself, his conduct became the sole proximate cause of his death. It follows that the given instructions would lead jurors to the inevitable conclusion that Gregoire's own conduct was the sole proximate cause of his death. These instructions absolve Oak Harbor of its duty, and any action against the city would necessarily fail. This result is unsupportable from a policy perspective, but also because the instructions did not properly inform the jury of the applicable law. Oak Harbor had a specific duty to protect Gregoire from injuring himself, and both contributory negligence and assumption of risk defenses must yield to that affirmative, nondelegable duty.

CONCLUSION
¶ 25 When a special relationship forms between jailor and inmate, sparking a duty for the jailor to protect the inmate from self-inflicted harm, the defenses of assumption of risk and contributory negligence are inappropriate. Giving these jury instructions in a negligence action arising from inmate suicide necessarily results in prejudicial error.
¶ 26 We reverse the Court of Appeals and remand for a new trial consistent with this opinion.
WE CONCUR: CHARLES W. JOHNSON, TOM CHAMBERS, and DEBRA L. STEPHENS, Justices.
CHAMBERS, J. (concurring).
¶ 27 I agree with the lead opinion. I write separately because I believe the learned trial judgeand perhaps othershas misapprehended the application of implied primary assumption of risk. The difference between express assumption of risk and implied primary assumption of risk is "`ceremonial and evidentiary.'" Kirk v. Wash. State Univ., 109 Wash.2d 448, 453, 746 P.2d 285 (1987) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 496 (5th ed.1984)). The elements of implied primary assumption of risk and express assumption of risk are identical. Id.; see also Scott v. Pac. W. Mountain Resort, 119 Wash.2d 484, 496-98, 834 P.2d 6 (1992). The effect of implied primary assumption of risk and express assumption of risk is also identical both result in a complete bar to recovery with regard to the specific risk assumed. Scott, 119 Wash.2d at 498, 834 P.2d 6. While express assumption of risk requires evidence that the claimant has expressly assumed a specific risk, implied primary assumption of risk requires evidence that, if the claimant failed to expressly assume a specific risk, the claimant's actions were tantamount to expressly assuming a specific risk. See id. at 497-98, 834 P.2d 6. Because the evidentiary standard is so high, this court has never applied implied primary assumption of risk to bar recovery in any case. Implied primary assumption of risk should accordingly be applied with caution and with a proper understanding of the principles underlying the doctrine.
MADSEN, C.J. (concurring/dissenting).
¶ 28 I agree with the lead opinion's assumption of risk analysis, but write separately to clarify that, depending on the facts, a trial court commits no error when it instructs the jury to apply comparative negligence to instances of jail suicide. A jail has a duty to provide health screenings and health care if necessary, and to protect an inmate from injury by third parties and jail employees, *933 but it has no freestanding duty to prevent inmate self-inflicted harm. That duty arises only when specifically articulated by law or if the jail affirmatively assumes the inmate's duty of self-care. Even if this duty arises, it would not necessarily eliminate the inmate's duty of self-care. In instances where both parties have duties, comparative negligence may apply. Only when the plaintiff can prove that the jail assumed the inmate's duty of self-care does comparative negligence become inappropriate.

Discussion
¶ 29 The relationship between a jailor and an inmate is a "special relationship." Caulfield v. Kitsap County, 108 Wash.App. 242, 255, 29 P.3d 738 (2001) ("Special relationships are typically custodial or at least supervisory, such as the relationship between doctor and patient, jailer and inmate, or teacher and student.").
¶ 30 Because there is a special relationship, there is some duty on the city of Oak Harbor's part. The lead opinion's mistake is to imply that merely finding a "special relationship" is sufficient to impose the specific duty to prevent suicide. This oversimplifies the analysis. A "special relationship" does not mean that the defendant owes the plaintiff every conceivable duty. As the court noted in Caulfield, the special relationship exception "do[es] not create new duties or eliminate recognized duties." Id. at 251, 29 P.3d 738 (citing Meaney v. Dodd, 111 Wash.2d 174, 178, 759 P.2d 455 (1988)). Indeed, each type of "special relationship" has a certain nature and scope from which specific duties are derived. See Caulfield, 108 Wash.App. at 255, 29 P.3d 738 (nature of special relationships between a county and "[p]rofoundly disabled" "vulnerable client[s]" creates a different duty of care than the special relationship between a hotel and guest).
¶ 31 In Washington, the duties of a jailer to an inmate (as of the time of Gregoire's arrest) derived from two sources: the Restatement (Second) of Torts and local administrative regulations.[1] RESTATEMENT (SECOND) OF TORTS § 314A (1965); Clerk's Papers (CP) at 40 (Jury instruction 14 listing "Washington State administrative regulations applicable to the Oak Harbor City Jail"). Taken together, these sources imposed a duty on the jail to screen for mental illness and provide emergency medical care but did not impose a duty to prevent self-inflicted harm. Washington's treatment of suicide as a volitional act supports this distinction between these duties. Cf. Webstad v. Stortini, 83 Wash.App. 857, 866, 924 P.2d 940 (1996) (stating suicide is a volitional rather than a negligent act).
¶ 32 Jury instruction 14, which was given in this case, correctly lists the administrative regulations applicable to Oak Harbor Jail. CP at 40. The duties of Oak Harbor Jail include (a) required screening for mental illness of all prisoners upon admission to the jail and (b) 24 hour access to emergency mental illness care or other medical care. Id. The regulations also require the jail to ensure that each shift include one person trained in cardiopulmonary resuscitation (CPR) and one person trained in receiving screening. Id. The instructions do not mention a specific duty imposed on the jail to prevent self-inflicted harm.
¶ 33 Restatement (Second) of Torts states: "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a ... duty to the other" "to take reasonable action (a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." RESTATEMENT (SECOND) OF TORTS § 314A(4), (1). Comment d clarifies that the scope of risk a custodian *934 must protect against includes "the actor's [i.e., the custodian's] own conduct, or the condition of his land or chattels," and "risks arising from forces of nature or animals," "from the acts of third persons [regardless of intent]," "from pure accident," or "from the negligence of the plaintiff himself." Id. cmt. d.
¶ 34 Notably, the scope of the Restatement as explained in comment d makes no mention of intentional self-inflicted harm, only negligent self-inflicted harm. In Washington, suicide is not considered negligence, but rather volitional conduct. "Suicide is `a voluntary willful choice determined by a moderately intelligent mental power[,] which knows the purpose and the physical effect of the suicidal act.'" Webstad, 83 Wash.App. at 866, 924 P.2d 940 (alteration in original) (internal quotation marks omitted) (quoting Hepner v. Dep't of Labor & Indus., 141 Wash. 55, 59, 250 P. 461 (1926)).
¶ 35 The Court of Appeals adopted section 314A of the Restatement (Second) of Torts in Shea v. City of Spokane, 17 Wash.App. 236, 241-42, 562 P.2d 264 (1977), aff'd, 90 Wash.2d 43, 578 P.2d 42 (1978), which held that a city has a nondelegable duty to provide medical care to a prisoner in custody. The duty to render medical aid is derived from the "special relationship" of custody that deprives the prisoner of liberty and the opportunity to seek medical aid independently. Shea, 17 Wash.App. at 242, 562 P.2d 264 (citing RESTATEMENT (SECOND) OF TORTS § 314A(4) (1965)).
¶ 36 In interpreting the Restatement, this court has clarified that the mere existence of a special relationship does not make the defendant a guarantor of the plaintiff's safety. Nivens v. 7-11 Hoagy's Corner, 133 Wash.2d 192, 203-04, 943 P.2d 286 (1997) (interpreting Restatement (Second) of Torts § 344, including comments d and f limiting scope of the duty). Indeed, every person has a duty to use reasonable care for his or her own health and safety. Charles J. Williams, Fault and the Suicide Victim: When Third Parties Assume a Suicide Victim's Duty of Self-Care, 76 NEB. L. REV. 301, 305 n. 20 (1997) (citing 57A AM.JUR.2D Negligence § 843 (1989)). Thus, in the ordinary case, the jail and the inmate both have duties and their respective fault should be apportioned by the jury through the comparative negligence doctrine. Only proof that the defendant assumed the plaintiff's duty of self-care should foreclose comparative negligence.
¶ 37 This conclusion is born out in our state's case law. For example, Yurkovich v. Rose, 68 Wash.App. 643, 847 P.2d 925 (1993), involved a negligence action against a bus driver and school district by the parents of a 13 year old girl who was killed crossing a highway shortly after exiting a school bus. The Court of Appeals recognized a special relationship and found "school bus operators owe child passengers a duty of the highest degree of care consistent with the practical operation of the bus." Id. at 648, 847 P.2d 925 (citing Webb v. Seattle, 22 Wash.2d 596, 602, 157 P.2d 312 (1945)). Although the bus driver owed a duty, and through his negligence created the risk of harm, the court nevertheless approved instructions that included contributory negligence. Id. at 656, 847 P.2d 925. The court reasoned that the plaintiff still owed a duty of self-care that neither the school district nor the bus driver assumed.
¶ 38 Similarly, Pearce v. Motel 6, Inc., 28 Wash.App. 474, 480, 624 P.2d 215 (1981), involved a negligence action against a motel owner brought by a guest who slipped on the shower floor. The Court of Appeals recognized that innkeeper-guest relationships create specific duties to guests regarding unsafe conditions on the premises. Id. at 479, 624 P.2d 215. However, reasoning that motel owners do not guarantee their guests' safety, the Court of Appeals found that comparative negligence applies because it takes into account the two separate duties: of the motel owner to his guest and of the guest to himself or herself. Id. at 480, 624 P.2d 215.[2]
¶ 39 Whether the defendant jail has assumed the inmate's duty of self-care is generally a question of fact. To prove a defendant *935 assumed an inmate's duty, a plaintiff must prove the defendant (i) had custody of the inmate, (ii) had knowledge, actual or constructive, of the inmate's self-destructive tendencies, and (iii) either expressly or implicitly assumed the inmates's duty of self-care. See Caulfield, 108 Wash.App. at 255, 29 P.3d 738 (custodial relationship between jailer and inmate); Shea, 17 Wash.App. at 242, 562 P.2d 264 (duty of jail to render aid is derived from special relationship of custody and includes duty to provide medical care); Bailey v. Town of Forks, 108 Wash.2d 262, 268, 737 P.2d 1257, 753 P.2d 523 (1987) (discussing duty arising from special relationship in context of governmental defendant); RESTATEMENT (SECOND) OF TORTS § 314A cmt. e (regarding the duty arising out of a special relationship, "[t]he defendant is not liable where he [or she] neither knows nor should know of the unreasonable risk"); 57B AM. JUR.2D Negligence § 857 (2004) (regarding the duty of self-care in context of contributory negligence, "the standard of conduct to which the actor must conform for his or her own protection is that of a reasonable person under like circumstances"). Unless the plaintiff establishes an assumption of his duty of self-care, a jury should not be foreclosed from considering comparative fault.[3]
¶ 40 The lead opinion relies heavily on Christensen v. Royal School District No. 160, 156 Wash.2d 62, 124 P.3d 283 (2005), and Hunt v. King County, 4 Wash.App. 14, 22-23, 481 P.2d 593 (1971), two cases in which defendants in special relationships did assume the plaintiff's duty of self-care, making comparative fault inappropriate. However, both of these cases involve unique circumstances not relevant here. Specifically, the Christensen holding was unique to sexual abuse. The court held that children, as a matter of public policy, have no duty to protect themselves from sexual abuse by teachers. Id. at 67, 69-70, 124 P.3d 283. Policy considerations involving sexual abuse of a child in the public school context do not apply in this case.
¶ 41 The second case, Hunt, involved the special relationship between a mentally disturbed patient and a closed psychiatric hospital. As noted by the lead opinion, the Hunt court held "the scope of duty owing by the hospital to its patients includes the duty to safeguard the patient from the reasonably foreseeable risk of self-inflicted harm through escape." Id. at 20, 481 P.2d 593. However, in explaining the duty owed, the Hunt court pointed out that every duty necessarily has a scope. The Hunt court contrasted the limited scope of a driver's duty to obey traffic laws, which does not include a duty to protect from self-inflicted harm (other than by "irresistible impulse"), to the broad scope of a psychiatric hospital's duty to prevent volitional self-inflicted injury. Id. at 21-22, 481 P.2d 593 (citing Vistica v. Presbyterian Hosp. & Med. Ctr. of S.F., Inc., 67 Cal.2d 465, 432 P.2d 193, 62 Cal.Rptr. 577 (1967)).
¶ 42 Both Hunt and Vistica involved cases of a hospital psychiatric ward taking custody of a mentally disturbed patient for the purpose of treatment. In both cases, a concerned parent informed the hospital of the patient's strong desire to escape regardless of physical harm an attempted escape might cause, and in both cases, hospital staff expressly assured the parent that preventative measures would be taken. Hunt, 4 Wash. App. at 17, 481 P.2d 593; Vistica, 67 Cal.2d at 467-68, 62 Cal.Rptr. 577, 432 P.2d 193. Even where a hospital had not expressly made such assurances, the nature of a psychiatric hospital may in some cases imply that the hospital takes custody of the patient with the primary purpose being treatment and prevention of self-inflicted harm. For these reasons, the defendants' assumption of *936 the plaintiff's duty of self-care in Hunt and Vistica accords with the nature of the special relationship between the psychiatric ward of a hospital and a mentally disturbed patient.
¶ 43 In contrast, treatment and prevention of self-inflicted harm are not generally the purpose of incarceration. Moreover, although regulations require at least one person per shift on jail staff to be familiar with basic health requirements, such as mental and physical screening procedure and basic CPR, jail staff are not required to be mental health experts. CP at 40.[4] In contrast, psychiatric ward hospital staff are highly trained to recognize and prevent self-destructive behavior. As such, hospital staff can be expected to meet the higher standard of care of a health care professional. RCW 7.70.040(1); Adair v. Weinberg, 79 Wash. App. 197, 202 n. 2, 901 P.2d 340 (1995) (citing Harris v. Robert C. Groth, M.D., Inc., 99 Wash.2d 438, 442-43, 663 P.2d 113 (1983)). In sum, the scope of the duties owed by a jailer to an inmate are not sufficiently similar to psychiatric ward-patient relationship to find that the jail assumed the inmate's duty of self-care.
¶ 44 Other jurisdictions and sources have also recognized that not all defendants in a special relationship assume a plaintiff's duty of self-care and thus agree that contributory negligence can be appropriate in instances of suicide.
¶ 45 In Champagne v. United States, 513 N.W.2d 75, 80 (N.D.1994), the Supreme Court of North Dakota reasoned that whether a psychiatric hospital assumes a mental patient's duty of self-care is not a forgone conclusion, but instead depends upon the capacity of the patient. The court used a sliding scale analysis in which "[t]he worse the suicidal patient's diminished capacity, the greater the medical provider's responsibility." Id. at 81. Where the patient retained sufficient capacity, comparative fault analysis remained appropriate. Id.
¶ 46 Similarly, in Molton v. City of Cleveland, 839 F.2d 240, 247-48 (6th Cir.1988), the Sixth Circuit Court of Appeals upheld a contributory negligence jury instruction in the case of a jail inmate suicide, concluding the facts provided sufficient evidence to support the jury's finding of the inmate's contributory negligence. Id. at 248.
¶ 47 The lead opinion relies heavily on statements from other jurisdictions to support its assertion that applying contributory negligence to inmate suicide would effectively "gut" the jail's duty to prevent inmate self-inflicted harm. However, this conclusion does not follow. First, as discussed above, the jail has no specific duty to prevent an inmate's self-inflicted harm, so this duty cannot be "gutted." Second, the application of comparative fault will not absolve the jail of meeting its duties toward prisoners. The purpose of comparative negligence is to apportion the liability between two parties who both violated their duties. See RCW 4.22.005, .070. In the face of contributory negligence, a jail must still pay for its fair share of liability for any negligent departure from its duties. This is in contrast to primary assumption of risk, the application of which would completely bar a plaintiff's claim.
¶ 48 Finally, the lead opinion's heavy reliance on cases from Indiana and Minnesota is misplaced. These jurisdictions have different liability rules that cause contributory negligence to operate more like Washington's primary assumption of risk doctrine. The harsher operation of the doctrine in these jurisdictions makes contributory negligence less appropriate in Indiana or Minnesota than it is in Washington.
¶ 49 For example, the lead opinion cites Sauders v. County of Steuben, 693 N.E.2d 16, 20 (Ind.1998), in which the Indiana court explained that comparative fault analysis is not appropriate to custodial suicide because it "would seem to risk random `all or nothing' results based on a given jury's predilections." However, the Indiana court characterized its own holding as follows:
[W]e hold that the decedent's act of suicide cannot be the basis for a finding of contributory negligence or incurred risk that would bar a plaintiff's claim for wrongful death of an inmate. To permit the suicide *937 (or attempted suicide) to constitute a bar to recovery would eliminate altogether a claim for breach of a custodian's duty to take reasonable steps to protect an inmate from harm, self-inflicted or otherwise.
Id. at 17 (emphasis added). The "all or nothing" "bar to recovery" result the Indiana court feared was a result of that jurisdiction's Tort Claims Act and case law in which any amount of contributory negligence completely bars recover against government defendants. Id. at 18 (citing IND.CODE § 34-4-16.5-1 et seq. (1993); Town of Highland v. Zerkel, 659 N.E.2d 1113, 1120-21 (Ind.Ct. App.1995)). In this context, contributory negligence would "gut" a jail's duty. This is in contrast to Washington's pure comparative fault law, which allows a plaintiff to recover from a defendant regardless of the ratio of fault. RCW 4.22.005, .070. In our quite different context, comparative fault will not bar recovery, risk an "all or nothing" result, or gut the jail's duty.[5]
¶ 50 Similarly, the lead opinion also cites language from Sandborg v. Blue Earth County, 615 N.W.2d 61, 65 (Minn.2000) (quoting RESTATEMENT (SECOND) OF TORTS § 449 cmt. b), in which the Minnesota court concludes application of comparative fault "`would be to deprive the [inmate] of all protection and to make the [jail's] duty a nullity.'" However, as the Respondent points out, Minnesota is a modified comparative fault jurisdiction "barring recovery to a plaintiff who's [sic] fault is determined to be greater than the fault of the person from whom recovery is being sought." Resp't's Suppl. Br. at 14-15 (citing MINN.STAT. § 604.01). In contrast to Washington's pure comparative fault statute, Minnesota's modified comparative fault increases the likelihood that a plaintiff's claim would be barred despite a jail's violation of its duty, thus gutting the jail's duty.
¶ 51 Differences in the law of these jurisdictions undercuts the lead opinion's reliance on Sauders and Sandborg.

Conclusion
¶ 52 Both jail officials and Gregoire had dutiesto provide for health and safety, and of self-care, respectivelyand absent proof that the jail assumed Gregoire's duty of self-care, the trial court on remand should be free to consider whether to instruct the jury on comparative fault.
WE CONCUR: JAMES M. JOHNSON and SUSAN OWENS, Justices.
ALEXANDER, J. (dissenting).
¶ 53 The lead opinion does not mention that the jury in this case never reached the questions of whether Edward Gregoire was contributorially negligent or assumed a risk of harm. In my view, it was unnecessary for the jury to do so because it found that the city of Oak Harbor's negligence was not a proximate cause of Mr. Gregoire's death. That being the case, even if we assume that the trial court's instructions on contributory negligence and assumption of risk were erroneous, their submission to the jury was harmless error.[1]See Dennis J. Sweeney, An Analysis of Harmless Error in Washington: A Principled Process, 31 Gonz. L.Rev. 277, 304 (1995/96) (erroneous instruction "[c]ured by the [j]ury's [v]erdict" is harmless); see, e.g., Miller v. Great N. Ry., 105 Wash. 349, 354, 177 P. 799 (1919) (erroneous contributory *938 negligence instruction was harmless where jury's verdict ruled out any finding of negligence against defendant); Faust v. Benton County Pub. Util. Dist. No. 1, 13 Wash. App. 473, 477-78, 535 P.2d 854 (1975) (erroneous res ipsa loquitur instruction was harmless where jury found plaintiff was not contributorially negligent); Okkerse v. Westgate Mobile Homes, Inc., 18 Wash.App. 45, 566 P.2d 944 (1977) (refusal to instruct on negligent misrepresentation was harmless where jury found defendant not liable for misrepresentation).
¶ 54 Tanya Gregoire's guardian ad litem and the estate of Edward Gregoire endeavor to get around this obvious problem by claiming that the jury instructions on contributory negligence and assumption of risk probably influenced the jury's decision on proximate cause. I fail to see how such a conclusion can be reached, particularly where, as here, the jury was properly instructed on proximate cause,[2] answered a special verdict question about proximate cause, and did not reach the special verdict question about contributory negligence.
¶ 55 Given these facts, one can only speculate as to what influenced the jury's determination that the city's negligence was not the proximate cause of Mr. Gregoire's death. We should not engage in such speculation. See Breckenridge v. Valley Gen. Hosp., 150 Wash.2d 197, 204-05, 75 P.3d 944 (2003) ("`The individual or collective thought processes leading to a verdict `inhere in the verdict' and cannot be used to impeach a jury verdict.'" (quoting State v. Ng, 110 Wash.2d 32, 43, 750 P.2d 632 (1988))). I would, therefore, affirm the Court of Appeals.
WE CONCUR: MARY E. FAIRHURST and JAMES M. JOHNSON, Justices.
NOTES
[1] Before April 1, 1974 contributory negligence was a complete bar to plaintiff's recovery in Washington if the damage suffered was considered partly the plaintiff's fault. See Laws of 1973, 1st Ex.Sess., ch. 138, § 1, codified at RCW 4.22.010, repealed by Laws of 1981, ch. 27, § 17; Godfrey v. State, 84 Wash.2d 959, 961 n. 1, 530 P.2d 630 (1975). But this State, like most others, has abolished this doctrine and adopted a comparative fault scheme. In 1981, Washington embraced its current contributory fault scheme of apportioning damages between a negligent plaintiff and a negligent defendant. Laws of 1981, ch. 27, § 8, codified at RCW 4.22.005. We use the term "contributory negligence" in this opinion for consistency with the given jury instructions and in reference to the decedent's alleged own negligence, not to the now-superseded doctrine.
[2] "[J]ury instructions that are not objected to are treated as the properly applicable law for purposes of appeal." Roberson v. Perez, 156 Wash.2d 33, 41, 123 P.3d 844 (2005).
[3] "[I]mplied unreasonable assumption of risk is subsumed under contributory negligence and should be treated equivalently." Kirk, 109 Wash.2d at 454, 746 P.2d 285.
[4] Jury instruction 6 stated, "Defendant further claims that Mr. Gregoire was contributorily negligent and assumed the risk of death when he hanged himself, and therefore his own conduct was the sole proximate cause of his death." CP at 32; see also CP at 46 (Jury Instruction 20) ("It is a defense to an action for wrongful death that the decedent impliedly assumed a specific risk of harm."); CP at 47 (Jury Instruction 21) (instructing jury that to establish assumption of risk, Oak Harbor had the burden of proving (1) Gregoire had knowledge of the specific risk associated with hanging himself; (2) he understood the nature of the risk; (3) and he voluntarily chose to accept the risk and impliedly consented to relieve Oak Harbor of its duty of care; and then instructing the jury on how to apportion comparative fault).
[5] Courts in other jurisdictions have extended prison authorities' duty to protect inmates from harm to include a prisoner's own self-destructive acts. See, e.g., Hayes v. City of Des Plaines, 182 F.R.D. 546 (N.D.Ill.1998) (applying Illinois law) (noting law enforcement owes a general duty of care to those arrested and incarcerated, including protecting prisoners from self-injury or self-destruction, under the circumstances of the particular case); Maricopa County v. Cowart, 106 Ariz. 69, 471 P.2d 265 (1970) (holding juvenile detention home officials must exercise such reasonable care and attention as a juvenile's mental and physical condition, if known, may require).
[6] The concurrence/dissent claims Hunt, 4 Wash. App. 14, 481 P.2d 593, and Christensen, 156 Wash.2d 62, 124 P.3d 283, do not apply. Concurrence/dissent at 935. While there is no silver-bullet case in our jurisprudence that resolves this matter of first impression, Hunt and Christensen make the best analogy to the facts before us. In contrast the concurrence/dissent's reliance on Yurkovich v. Rose, 68 Wash.App. 643, 847 P.2d 925 (1993), and Pearce v. Motel 6, Inc., 28 Wash. App. 474, 480, 624 P.2d 215 (1981), is misplaced because those casesboth from the Courts of Appealinvolve noncustodial relationships. Concurrence/dissent at 934-35. While we note the obvious differences between "custody" in schools, mental hospitals, and jails, Christensen and Hunt present much closer similarities to the instant matter than do Yurkovich and Pearce. We do not contest that contributory negligence has a time and place in our courts; however, that time and place does not include suicides of jail inmates.
[7] Sauders mentions "all or nothing" results "based on a given jury's predilections" only to call attention to a jury's likelihood of assigning 100 percent fault to the suicide victim and none to the jailleaving the plaintiff with zero damages. 693 N.E.2d at 20. The concurrence/dissent misinterprets this statement as a statutory bar to recovery. Concurrence/dissent at 936-37.
[8] The court stressed this principle was not equivalent to imposing strict liability on defendants because the plaintiff must still prove the jail breached a reasonable standard of care. 615 N.W.2d at 65. Disallowing the defenses of contributory negligence and assumption of risk does not result in strict liability for jails because inmates must still establish the jail negligently performed its duty.
[9] The concurrence/dissent invents a three-prong test to determine whether Oak Harbor assumed Gregoire's duty. See concurrence/dissent at 934-35. It offers no accurate support for this test, which is contained nowhere in Bailey.
[10] During deliberations, the jury requested clarification from the court on the definition of proximate cause. CP at 55.
[11] We consider the instructions as a whole, including the relationship between them, as the jury was charged with doing. See Jackman, 156 Wash.2d at 743, 132 P.3d 136.
[1] The Washington Administrative Code originally listed jail operating procedures, including health screening and healthcare provision duties, but this code was obsolete by the time of Gregoire's arrest, after the legislature directed cities and towns to adopt their own jail operating standards. Former WAC 289-20-105, -110, -130 (1981), decodified by Wash. St. Reg. XX-XX-XXX (June 22, 2006); RCW 70.48.071 (requiring local cities and counties to promulgate their own jail operating standards). Jury instruction 14 lists the applicable administrative regulations. Clerk's Papers (CP) at 40.
[2] The lead opinion complains about my reliance on Yurkovich and Pearce, saying that they do not concern custodial relationships. They do, however, concern special relationships and application of comparative fault and contributory negligence principles.
[3] The lead opinion misstates the standard that I propose when it says that under my view the inmate's duty of self-care would "be assumed through constructive notice in jail suicides generally." The lead opinion says that jail suicides are not infrequent and are foreseeable, if not expected. Lead opinion at 931. The lead opinion's rewording of the analysis should be seen for what it is, an attempt to alter my proposed three-part test into a single pro forma inquiry, concluding with automatic constructive notice, and therefore duty, in virtually all cases. Such a meaningless inquiry does not accord with the concept of comparative fault and contributory negligence as set forth in our statutes and with my proposal that the defendant prove that the jail assumed the duty of self-care.
[4] The jury was instructed to this effect in instruction 14.
[5] The lead opinion contends that I have misinterpreted Sauders' statement about "all or nothing" results as a statutory bar to recovery. Lead opinion at 930 n. 7. The lead opinion fails to understand that, as the court in Sauders expressly stated, because the defendant in the case was a government entity, the action was covered by the Indiana Tort Claims Act. "[U]nder the Tort Claims Act, as at common law, both contributory negligence and incurred risk operate to bar a plaintiff's recovery against government actors." Sauders, 693 N.E.2d at 18 (emphasis added). Thus, as I explain, under Indiana law, the "all or nothing" "bar to recovery" result of which the Indiana court spoke was in reference to the fact that any contributory negligence on the plaintiff's part would absolutely bar any recovery. Therefore it would, as I explain, "gut" a jail's duty. Contrary to the lead opinion's erroneous assessment, the Indiana court's reference was not to the possibility that a jury might assign 100 percent of the fault to the plaintiff, lead opinion at 930 n. 7, but to the possibility that a jury might assign any fault.
[1] I, nevertheless, agree with Chief Justice Madsen's discussion of comparative negligence and her opinion that on remand the trial court should "be free to consider whether to instruct the jury on comparative fault." Concurrence/dissent at 937.
[2] The proximate cause instruction initially given by the trial court was Washington Pattern Jury Instructions: Civil 15.01. Clerk's Papers (CP) at 43; 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 15.01, at 181 (5th ed. 2005) (WPI). Upon receiving a request from the jury for a clearer definition of proximate cause, the trial court provided WPI 15.01.01 to the jury. CP at 55; 6 WPI 15.01.01, at 185. Our court did not grant review on the issue of whether the proximate cause instructions given by the trial court were erroneous. Supreme Court Order, Gregoire v. City of Oak Harbor, No. 81253-5, 164 Wash.2d 1007, 195 P.3d 86 (Wash. Sept. 3, 2008) (granting review "only on the issue of whether the trial court erred in instructing the jury as to contributory negligence and assumption of risk"); Pet. for Review at 1.