[No. 14462. Department Two. February 14, 1918.]

FRED KUSAH, *Respondent*, v. FRED W. McCORKLE, *as Sheriff of Thurston County, et al., Appellants.*[1]

INSANE PERSONS—LIABILITY FOR TORT. A prisoner, although insane, is liable in tort for an assault committed upon a fellow prisoner.

SHERIFFS AND CONSTABLES—DUTY AS TO PRISONERS—NEGLIGENCE—LIABILITY. Under Rem. Code, §§ 8499, 8500, and 3990, which are but declaratory of the common law, the duty of a sheriff and his deputy to a prisoner committed to his custody is to exercise reasonable and ordinary care to protect his life and health.

SAME—CUSTODY OF PRISONERS—NEGLIGENCE—QUESTION FOR JURY. Whether it was negligence for a sheriff's deputy to place an insane suspect in a cell with other prisoners without searching him and taking away his knife, is a question of fact for the jury, where he was declared to be mild and inoffensive and showed no violent tendencies.

SAME—LIABILITY FOR ACTS OF DEPUTY—INJURIES TO PRISONER. A sheriff is responsible for the negligence of his deputy in the performance of his duty as such, and where an insane suspect was committed by a warrant, it cannot be said that the deputy's failure to search him when he was brought in was an unauthorized act of the deputy.

SAME—CUSTODY OF PRISONER—LIABILITY OF SURETY ON BOND. In such a case, if the sheriff is found guilty of negligence, the surety on his bond would be liable to the extent of the bond, conditioned for the faithful performance of his duties.

SAME — INJURIES TO PRISONER — CONTRIBUTORY NEGLIGENCE. A prisoner in jail, attacked by an insane person with a knife, is not guilty of contributory negligence in that he was charged with knowledge of the possession of a knife by the insane person or of the sheriff's negligence in omitting to make a search.

DAMAGES — PERSONAL INJURIES — EXCESSIVE VERDICT. A verdict for $1,000 for injuries sustained in an assault with a knife, is excessive, when based upon a statement of a physician that a knife wound had resulted in "wrist drop," where such witness did not see the wound until 30 days after it was inflicted, and all the other evidence from the time of the occurrence undisputably shows that there was no "wrist drop."

[1]Reported in 170 Pac. 1023.

NEW TRIAL—GROUNDS—EXCESSIVE VERDICT.　Passion and prejudice in the assessment of excessive damages against a sheriff and his bonding company must be inferred, where the company was only liable in case of the negligence of the sheriff and to the same extent and the jury twice attempted to assess a larger verdict against the bonding company than against either of the persons primarily liable.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered January 27, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Reversed.

*Bates & Peterson, Geo. F. Yantis,* and *Troy & Sturdevant,* for appellants.

*Elias A. Wright* and *Sam A. Wright (E. N. Steele,* of counsel), for respondent.

HOLCOMB, J.—While respondent was lawfully incarcerated in the Thurston county jail in the custody of the sheriff and his deputies, on May 9, 1917, he was attacked, cut, and stabbed with a knife by a man named Reisch, then confined in the same jail and custody under the charge of insanity lodged against him by the county attorney on May 6, 1917. Reisch was delivered by the chief of police of Olympia into the custody of Gifford, deputy sheriff and jailer, during the absence of his principal, sheriff McCorkle. During the three days Reisch was in jail prior to the affray, he was quiet and peaceable and showed no signs of insanity, and the same was true during the preceding night while he was in custody of the chief of police. It appears that Reisch was not searched when taken into custody by the deputy sheriff, and, when the affray took place, he was found in possession of a knife with which he inflicted the injuries. Reisch was confined in the main room of the jail with Kusah and several others. The affray took place about one o'clock on the morning of May 9. Respondent alleged in his complaint that he

was stabbed by Reisch in the right arm at the elbow, with several other slight stabs, cuts, or scratches, and that the stab in the elbow caused the musculo spiral nerve to be severed which produced a paralysis of the wrist, causing the wrist to drop down and the condition called "wrist drop."

The negligence charged by the complaint against the sheriff and his surety consisted of the sheriff's receiving into the jail where the respondent was kept a dangerously insane person, and carelessly and negligently placing the insane person in a cell occupied by respondent, and carelessness and negligence on the part of the sheriff in not searching the insane man and taking from him his weapons.

The sheriff, his surety, and Reisch, the insane man, were all sued by respondent, and the trial court gave appropriate instructions to the jury in order to separate the liability of the sheriff and his surety from that of the defendant Reisch. It is apparently conceded that Reisch, though insane, was liable for such tort as he was alleged to have committed upon respondent in this case. The court so submitted the case to the jury, and, we think, properly. 14 R. C. L. 596, § 51.

Upon the submission of the case to the jury, they attempted to return a remarkable series of verdicts. They first brought in a verdict for $1,000 in favor of respondent, segregating the same into a verdict for $500 against the bonding company, $400 against the sheriff, and $100 against Reisch. The court refusing to accept this verdict, after some explanation as to the meaning of the instructions separating the liability of the sheriff and the surety from that of defendant Reisch, they again deliberated and returned a verdict of $666.66 against the bonding company and $333.34 against McCorkle and Reisch, which verdict was also refused by

the court. The jury were ordered to again deliberate, and thereafter they returned with a verdict of $1,000 against all of the appellants. This verdict was entered. Appellants moved for judgment notwithstanding the verdict and for a new trial, which were denied, and judgment was entered against appellants, and each of them, in the sum of $1,000. A motion had been made by appellants, and each of them, at the close of respondent's case, to direct a verdict on any judgment for appellants, which was denied.

Appellants make the following claims of error: (1) That the verdict of the jury and the judgment thereon are not sustained by the evidence; (2) that the negligence, if any, was the contributory negligence of respondent; (3) that the injuries suffered by respondent, if any, resulted through the unauthorized act of a deputy in placing the insane suspect in jail and holding him there without a warrant or process and without the knowledge of the sheriff, and, as a consequence thereof, no legal liability attaches to the defendant sheriff or his surety; (4) if an act of the deputy was an act within his official duties, it was one resting within his discretion, and the court is precluded from reviewing the discretionary action of the sheriff as to the manner of the performance. We shall discuss these contentions in reverse order.

The principal question to be determined is whether or not the sheriff is answerable *civiliter* for alleged negligence in the performance of his duty by himself or his deputy in regard to the detention of the insane suspect and the manner of his custody and failure to search him upon receiving him.

Our statute, Rem. Code, § 8499, provides:

"The sheriff, or in case of his death, removal, or disability, the person appointed by law to supply his

11—100 WASH.

place, shall have charge of the county jail of his proper county and of all persons by law confined therein, and such sheriff or other officer is hereby required to conform in all respects to the rules and directions of said judge above specified, or which may from time to time by such judge be made and communicated to him by said commissioners.''

Section 8500, Rem. Code, provides for the keeping of a jail register by the sheriff or other officer performing the duties of a sheriff, and, among other things, requires that the name of each prisoner, with the date and cause of his or her commitment, together with a list and value of property taken from such prisoner, or delivered to the sheriff or other officer at the time of the commitment of such prisoner, shall be kept.

Section 3990, Rem. Code, provides that the sheriff may provide as many deputies as he thinks proper, for whose official acts he shall be responsible to the amount of his bond, and may revoke such appointments at his pleasure; and persons may also be deputed by any sheriff in writing to do particular acts; and the sheriff shall be responsible on his official bond for the default or misconduct in office of his deputies.

These statutory provisions are but declaratory of the common law. 1 Blackstone's Commentaries, 343; *South v. Maryland etc.*, 18 How. (U. S.) 396; *Ex Parte Jenkins*, 25 Ind. App. 532, 81 Am. St. 114; *State ex rel. Tyler v. Gobin*, 94 Fed. 48.

In *Ex Parte Jenkins, supra,* it was remarked:

''It is unnecessary to cite authorities to the effect that when a sheriff takes property of any kind into his possession by virtue of a writ, he is bound to take ordinary care of the property and prevent its deterioration or destruction, and for a failure in this regard he is liable on his bond. There certainly can be no reason for saying that his duty as to care is not at least equally obligatory in respect of a prisoner who is in his custody by virtue of his office. In *State v. Gobin*, 98

Fed. 48, Baker, J., said: 'When a sheriff, by virtue of his office, has arrested and imprisoned a human being, he is bound to exercise ordinary and reasonable care, under the circumstances of each particular case, for the preservation of his life and health. This duty of care is one owing by him to the person in his custody by virtue of his office, and for a breach of such duty he and his sureties are responsible in damages on his official bond,' [citing authorities].

"The sheriff of the county has the care and custody of prisoners committed to the county jail. The duty the sheriff owes to the state to keep a prisoner committed to his custody and deliver him over to the proper authority at the proper time is no more compulsory than is the duty he owes the prisoner himself to exercise reasonable and ordinary care to protect the prisoner's life and health. If he permits a prisoner to escape or to be taken from his custody the fault is *prima facie* his, and there has been *prima facie* a breach of official duty for which he is liable on his official bond."

Hence it is plain that the sheriff's duty in regard to prisoners or others in his lawful custody is twofold; one to the state to keep and produce the prisoner when required, and the other to the prisoner to keep him in health and safety. That has been declared by this court in *McPhee v. United States Fidelity & Guaranty Co.*, 52 Wash. 154, 100 Pac. 174, 132 Am. St. 958, 21 L. R. A. (N. S.) 535, and *Riggs v. German,* 81 Wash. 128, 142 Pac. 479.

In *Riggs v. German, supra,* it is also declared that a sheriff cannot be charged with negligence in failing to prevent what he could not reasonably anticipate, and that a sheriff should not be required, in the exercise of ordinary care, to maintain himself or deputy in the presence and company of his prisoners unless the circumstances as developed by the testimony are such that it can be said that the sheriff had reasonable ground to apprehend the danger. So in the case at bar: The

question of whether the sheriff or his deputy was negligent in his manner of keeping the prisoners together in one common room in the jail depends upon a number of circumstances, among which was the question of what was safest and most humane for the prisoners; what was most conducive to their health, well-being and safety; the character of the prisoners themselves, and their conduct; and possibly a number of other circumstances. The question of whether it was negligent not to search Reisch, an insane suspect, who was declared to be mild and inoffensive and showed no violent traits or tendencies, was also a question of fact to be determined under all the circumstances surrounding him, the complaint against him, and the manner of his custody. All these were questions of fact for the jury, and the court properly so considered, but possibly did not give sufficient instructions to the jury as to how to determine the negligence of the sheriff and his deputies from the facts existent.

Appellants contend that these acts or omissions of the sheriff and his deputy were matters of his discretion and of quasi-judicial nature solely committed to him, and for such acts or omissions he is not answerable to another in any court. *Emery v. Littlejohn*, 83 Wash. 334, 145 Pac. 423, Ann. Cas. 1915D 767, is cited as sustaining this contention. That case clearly does not sustain this contention. That was a case against the superintendent of an insane asylum in this state, and others, for the alleged negligence of the superintendent and his assistant in permitting a patient committed to their charge to be paroled and given over to the custody of the patient's relatives. There is a statute, Rem. Code, § 5967, providing that any patient may be discharged from the hospital when in the judgment of the superintendent it is expedient. It was therefore held that that statute gave authority to the superin-

tendent to use his discretion generally and to finally discharge or temporarily parole patients committed to his custody.

In the case of the sheriff, both by statute and at common law, as we have seen, he owes the direct duty to a prisoner in his custody to keep him in health and free from harm, and for any breach of such duty resulting in injury he is liable to the prisoner or, if he be dead, to those entitled to recover for his wrongful death. *McPhee v. United States Fidelity & Guaranty Co., supra;* 25 Am. & Eng. Ency. Law (2d ed.), p. 676; 22 Am. & Eng. Ency. Law (2d ed.), p. 1306; 35 Cyc. 1942. If the sheriff is found guilty of such negligence, the surety on his bond would also be liable to the extent of the bond, for the bond is conditioned for the faithful performance of his duties.

The sheriff, being responsible for reasonable care in the selection of his deputies, is responsible also for the negligence of a deputy in the performance of his duty as such. The acts or omissions of Gifford as deputy were the acts or omissions of McCorkle as sheriff. Whether due and ordinary care was exercised in searching or omitting to search the insane suspect at the time and in the manner and under the circumstances in which he was brought to the custody of the sheriff and his deputy was a question of fact for the jury to be determined in the light of all the facts and circumstances.

Neither can it be said, as urged under the third claim of appellants, that the injury, if any, resulted through the unauthorized act of a deputy in placing the insane suspect in jail and holding him there without a warrant or process and without the knowledge of the sheriff. The complaint filed by the prosecuting attorney was the only warrant required for the detention of the insane suspect. The suspect was being pro-

ceeded against in due form of law, and was delivered to the custody of the sheriff and his deputy for safe-keeping in order that he might be produced before an inquest of lunacy, or discharged. It is the duty of the sheriff, therefore, to keep the suspect safely until so produced or discharged.

It is urged by appellants that the negligence, if any, was the contributory negligence of respondent. This is based upon the fact that the respondent was shown to have had knowledge that Reisch was charged with insanity and was detained as an insane suspect, and that, if he had any knife in his possession, being confined with respondent and the other prisoners together, respondent must have known of the possession of the knife by Reisch. We can see nothing in this contention, and think that merely to state it is to determine its fallacy. At any rate, respondent's testimony was that he did not know that Reisch had a knife until the time of the affray. He certainly was not chargeable with knowledge of any negligence of the sheriff and his deputy in omitting to search and in confining Reisch in the common room of the jail with him, for both he and Reisch were in the sole power of the sheriff and his deputy. It would certainly be an inhuman rule that would require any care and caution on the part of an inmate of a jail as to the performance or nonperformance of the duty of his keepers toward him.

As to the contention of appellants that the verdict of the jury and judgment are not sustained by the evidence, there are great grounds for discussion. Certain injuries were concededly inflicted upon respondent for which he was entitled to recover his actual loss occasioned thereby, if any, and his consequential damages, such as pain and suffering and loss of earning capacity. Under the evidence, there was no immediate loss of money or property by reason of the injury. His bills

for medical services and hospital were paid by the county, and he lost no time, for he was then lawfully confined in the county jail to await trial upon a criminal charge.  The only real injury beside pain and suffering claimed by respondent was the wrist drop.  It appears undisputed by the evidence that neither at nor immediately after the conflict in the jail, nor for several days thereafter, did he make any complaint of injury in the nature of wrist drop.  Several days after the injury, he did claim that his hand was somewhat stiff; that, when he attempted to straighten his fingers, he found it hard to do so.  But the evidence of all the physicians who testified in the case, except that of respondent's medical witness, was that wrist drop, produced by the severing of the musculo spiral nerve, is a condition of the hand and arm whereby the control of the muscles is lost and the hand assumes a claw-like shape with fingers and thumb drawn in.  The wrist cannot be held up; the hand bends or lops forward at the wrist, and cannot be pronated or supinated, as the doctors say; that is, cannot be turned back down or palm down.  Doctors testified that it would be impossible to strike a punching blow; it would break the wrist, if such condition existed, and injure the striker more than the stricken.  It would be impossible to use the hand in the operation of washing one's self.  They also testified that wrist drop is so striking and serious and apparent an injury that it would be instantly perceptible; that it would occur instantly after the severing of the musculo spiral nerve.

None of this evidence is disputed by any medical witness for respondent.  His one medical witness testified only that respondent came to him on June 4, which was about four weeks after the conflict; that then he complained that he could not use his hand, and the doctor said that it was wrist drop.  Appellant's medical wit-

nesses testified that wrist drop can easily be, and often is, simulated. Respondent's medical witness did not see him until four weeks after the injury, when the wound had healed, and he could not then readily tell the nature of the wound or whether it was in such location as to affect the nerve. Appellants' medical witnesses, two of whom treated him within a half hour after the injury, testified that the stab wound in the elbow was a very shallow wound cutting through the skin, but not through the subcutaneous tissue; that it did not penetrate the muscular tissue at all, and was from an inch to an inch and a half from the location of the musculo spiral nerve; that the musculo spiral nerve lies deep in the arm, and it would have required a wound of considerable depth in that location to have touched the nerve at all, but that the wound in question did not go anywhere near it. Respondent himself testified that he did not know he was wounded or cut until his attention was later called to that fact by another prisoner, who told him that his arm was bleeding. It is also indisputably shown that, during the affray, respondent struck Reisch a number of times, using both hands to do so, and knocking Reisch down several times; and further, that, immediately after the fight, he washed his hands himself, using both hands to do so. This state of facts almost conclusively demonstrates that there was no injury to the musculo spiral nerve and no real wrist drop possible. Yet, indisputably, there was some injury and damage inflicted.

In view of the fact that the jury twice attempted to assess a larger verdict against the bonding company than against either the sheriff or Reisch, when the bonding company was liable only in case of the negligence of the sheriff and only to the same extent, we are of the opinion that passion and prejudice on the part of the jury must be inferred.

As shown by the preceding discussion, we cannot hold, as a matter of law, that the sheriff is not liable for the negligence of himself and deputy, but it is a question of fact whether they were negligent. The right of recovery of any sum approaching $1,000, or the half of it, under the facts here, is doubtful at best. Under such conditions as are here shown, including the indicated passion and prejudice on the part of the jury, we think it would be unjust to hold any of the appellants foreclosed by the findings of the jury. In the furtherance of justice, a new trial should be had.

The judgment is therefore reversed, and the cause remanded for a new trial.

MOUNT and MORRIS, JJ., concur.

ELLIS, C. J., concurs in the result.