IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| MILTON SCOTT,<br><br>     Appellant,<br><br>    v.<br><br>KING COUNTY, KING COUNTY DEPARTMENT OF ADULT DETENTION,<br><br>     Respondent,<br><br>BRIAN KAVALSKI also known as BRIAN BROWN,<br><br>     Defendant. | No. 83682-0-I<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Milton Scott appeals the summary dismissal of his negligence action against King County and the King County Department of Adult Detention (King County, collectively) for its alleged failure to prevent Brian Kavalski, another jail inmate, from attacking him. Because Scott failed to establish that jail officials had good reason to believe Kavalski would injure him, we affirm the dismissal.

FACTS

In September 2018, Scott was in custody at the King County Jail. While sitting at breakfast on the morning of September 15, Scott saw other inmates

refusing to allow Brian Kavalski to sit at their tables. Kavalski had previously been labeled a "snitch," including the night before the breakfast incident.

When Kavalski approached his table, Scott said, "Hey man. You need to go back and sit where you -- I don't need you trying to sit over here with me because you can't -- because you don't have anywhere to sit. That's not my problem." Scott also said, "No. The vibe you got, what you got going on, I don't need none of that over here." Scott did not want to be associated "with no snitch."

Despite these comments, Kavalski placed his breakfast tray on the table where Scott was sitting. Scott kicked the chair in which Kavalski intended to sit away from the table and pushed Kavalski's tray to the side. The "next thing I know," Scott reported, Kavalski "picked up his tray and hit me upside the head with it" and they started fighting. Scott believed that Kavalski was angry because "I didn't let him sit at my table, and he was embarrassed because I told him in front of 50—some other inmates that he was not sitting at my table."

Scott and Kavalski exchanged "[a] couple of blows." Scott stepped on "some pudding," slipped, and fell on his shoulder. Kavalski fell on top of Scott, who suffered a right shoulder injury as a result. Scott subsequently sued King County for negligence in failing to protect him from Kavalski.[1]

King County moved for summary judgment, arguing there was no evidence that jail officials knew or had good reason to know that Kavalski would

---

[1] Scott's complaint was not designated in the clerk's papers. RAP 9.6(b)(1)(C) requires the party seeking review to include the complaint in the clerk's papers. However, we have a sufficient record to resolve the issue raised in this appeal. We also note that Kavalski is not a party in this appeal.

attack Scott. Scott opposed the motion and asserted that Kavalski had a "mental condition" that was "known by the inmates" and King County. Agreeing with King County, the trial court granted summary judgment and dismissed Scott's action.

Scott appeals.

ANALYSIS

The sole issue in this appeal is whether the trial court erred in granting King County's summary judgment motion. We see no error.

I. Standard of Review

We review summary judgment orders de novo. Hadlev v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). We consider all facts and reasonable inferences from them in the light most favorable to the nonmoving party. Vallandigham, 154 Wn.2d at 26. But we consider only the issues and evidence the parties called to the trial court's attention on the motion for summary judgment. RAP 9.12.

II. Dismissal of Negligence Claim

"Summary judgment in favor of the defendant is proper if the plaintiff fails to make a prima facie case concerning an essential element of his or her claim." Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001). If the defendant shows an absence of evidence to establish the plaintiff's case, "the burden shifts

3

to the plaintiff to produce evidence sufficient to support a reasonable inference that the defendant was negligent." Seybold, 105 Wn. App. at 676. The defendant is entitled to judgment as a matter of law if the plaintiff fails to satisfy this burden. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

"The elements of negligence are duty, breach, causation, and injury." Keller v. City of Spokane, 146 Wn.2d 237, 242, 44 P.3d 845 (2002). Existence of a duty is a question of law, but issues of breach of that duty and causation are generally questions of fact. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 929 P.2d 400 (1999).

"As a matter of tort law, Washington courts have long recognized 'a jailer's special relationship with inmates, particularly the duty to ensure health, welfare, and safety.'" In re Pers. Restraint of Williams, 198 Wn.2d 342, 359, 496 P.3d 289 (2021) (quoting Gregoire v. City of Oak Harbor, 170 Wn.2d 628, 635, 244 P.3d 924 (2010)). Jailers owe "'a positive duty arising out of the special relationship that results when a custodian has complete control over a prisoner deprived of liberty.'" Gregoire, 170 Wn.2d at 635 (quoting Shea v. City of Spokane, 17 Wn. App. 236, 242, 562 P.2d 264 (1977)). "[T]his duty of providing for the health of a prisoner is nondelegable." Gregoire, 170 Wn.2d at 635 (citing Shea, 17 Wn. App. at 242). "'[F]or any breach of such duty resulting in injury [the custodian] is liable to the prisoner or, if he be dead, to those entitled to recover for his wrongful death.'" Gregoire, 170 Wn.2d at 635 (quoting Kusah v. McCorkle, 100 Wn. 318, 325, 170 P. 1023 (1918)).

To establish liability for injury to one inmate inflicted by another inmate, a plaintiff must prove "knowledge on the part of prison officials that such an injury will be inflicted, or good reason to anticipate such, and then there must be a showing of negligence on the part of these officials in failing to prevent the injury." Winston v. State/Dep't of Corr., 130 Wn. App. 61, 64, 121 P.3d 1201 (2005) (citing Kusah, 100 Wn. at 323). "The prison official is presumed to have performed his duty." Winston, 130 Wn. App. at 64 (citing Riggs v. German, 81 Wn. 128, 131, 142 P. 479 (1914)). "But when there is evidence tending to rebut that presumption, the question is one of fact for the jury." Winston, 130 Wn. App. at 64 (citing Eberhart v. Murphy, 113 Wn. 449, 453, 194 P. 415 (1920)).

Here, in response to King County's claim that the jail lacked any notice of Kavalski's potential for inflicting physical injury, Scott produced (1) a copy of the incident report, (2) a chart note from Harborview Medical Center regarding Scott's injury, (3) excerpts from Scott's deposition, and (4) a case report from the King County District Court's Mental Health Court Division showing docket entries relating to a criminal complaint filed against Kavalski. Neither Scott's deposition testimony nor any of the documents he produced establish that Kavalski had a history of physically attacking or threatening other inmates. Other than being aware that Kavalski had yelled at other inmates, which Scott said was "very normal" in a jail environment, Scott had never witnessed Kavalski physically threaten anyone else nor had seen him involved in any physical altercations. Indeed, prior to this altercation, Scott and Kavalski did not have any interaction

with each other. Scott stated, "I've never said anything to this guy nor had he ever said anything to me."

Further, although Scott alleges that Kavalski had a known "mental health condition," the record is silent regarding Kavalski's mental health status or propensity for physical violence. A case report showing docket entries in mental health court is insufficient to establish any specific mental condition, much less one that would, without more, establish that King County had reason to anticipate that Kavalski would harm Scott.

Accordingly, even when viewing all reasonable inferences from Scott's materials in a light most favorable to him, there is nothing in the record to show that jail officials breached a duty to Scott or that such breach caused Scott's injury. Because Scott did not present admissible evidence to indicate otherwise, summary judgment in favor of King County was proper.

We affirm.

_Chung, J._

WE CONCUR:

_Bruman, J_          _Andrus, C.J._

6