**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**NOVEMBER 28, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BARBARA ANDERSON and ROD BATTON, and each of them, INDIVIDUALLY, and BARBARA ANDERSON and ROD BATTON as Co-Personal Representatives of the Estate of Derek Batton, | ) ) ) ) ) ) | No. 38892-1-III |
| | ) | |
| Respondents, | ) ) | PUBLISHED OPINION |
| v. | ) ) | |
| GRANT COUNTY, WASHINGTON, | ) ) | |
| Petitioner, | ) ) | |
| JOHN KRIETE, DAN DURAND, JOHN QUERIN and DAN SIMON and JOHN DOE V-X, and each of them, | ) ) ) ) | |
| Defendants. | ) | |

COONEY, J. — In August 2018, Derek Batton, while incarcerated at the Grant County Jail, died after ingesting heroin that was smuggled in by his cellmate, Jordan Tebow. In February 2022, Mr. Batton's parents, Barbara Anderson and Rod Batton, individually and as copersonal representatives of the estate of Derek Batton (collectively Estate), sued Grant County (County), alleging negligence based on the County's failure to adequately search Mr. Tebow for drugs. The County promptly filed a motion for

No. 38892-1-III
*Anderson v. Grant County*

summary judgment dismissal, asserting complete immunity under Washington's felony

defense statute, RCW 4.24.420, and comparative fault under RCW 5.40.060.  The trial

court denied the County's motion.  We granted the parties' joint motions for discretionary

review to resolve three questions: (1) whether RCW 4.24.420 applies to the facts of this

case; (2) if RCW 4.24.420 is applicable, whether the 2021 statutory amendments apply;

and (3) whether the law, as enunciated in the Supreme Court's holding in *Gregoire v.*

*City of Oak Harbor*, 170 Wn.2d 628, 244 P.3d 924 (2010) (plurality opinion), precludes

application of RCW 5.40.060.

As to the third question, we broadened our review and hold that the special

relationship between the County and Mr. Batton precludes the County from asserting the

complete defense of immunity under RCW 4.24.420 and comparative fault under RCW

5.40.060.  With this holding, we need not address the first two questions.

BACKGROUND

Throughout the summer of 2018, the Grant County Sheriff's Office struggled to

control the flow of opioids and other contraband into the Grant County Jail.  As one

lieutenant within the sheriff's office described, it became routine for dealers to deliver

drugs to inmates by preplanning their arrests and then secreting the drugs orally, anally,

or vaginally into the facility.  Drug toxicity caused several inmates to be hospitalized.

Clerk's Papers (CP) at 114.

2

No. 38892-1-III
*Anderson v. Grant County*

Corrections officers attempted to block the entry of contraband into the jail by following a bodily search policy. On the least invasive end, officers conducted pat down searches of all inmates and arrestees on a "frequent[ ]" basis. CP at 118. Officers were further authorized to conduct modified or total strip searches of inmates under specified circumstances, including where the arrestee or inmate was previously found to possess contraband while incarcerated or was booked on a violent felony or drug charge. On the most invasive end, the bodily search policy authorized physical body cavity searches wherein the officer would obtain a search warrant and the prior written approval of the chief deputy and the ranking shift supervisor on duty.

Reportedly, several officers expressed confusion over when a reasonable suspicion or probable cause existed that allowed for authorization of a full or modified strip search. Staff also apparently struggled with the lack of procedures surrounding strip searches of transgender inmates. As a result, officers would occasionally fail to comply with the County's bodily search policy.[1]

---

[1] Even when the bodily search policy was adequately complied with, efforts to restrict the flow of drugs into the jail sometimes proved unavailing. As a result, in early July 2018, Lieutenant Dan Durand of the Grant County Sheriff's Office wrote to Joe Kriete, Chief Deputy of Corrections, requesting that any 2019 capital outlay funds go toward the purchase of a whole-body X-ray scanner, which would more accurately detect any drugs or other dangerous contraband smuggled in by arrestees or inmates. The record does not indicate what, if anything, Chief Deputy Kriete responded to Lieutenant Durand's request for a whole-body X-ray scanner.

3

No. 38892-1-III
*Anderson v. Grant County*

On August 10, 2018, Derek Batton was booked into the Grant County Jail.  The next day, Jordan Tebow[2] was booked into jail.  Mr. Tebow had an "extensive" history with the Grant County Sheriff's Office.  CP at 130.  He had been booked into the Grant County Jail over 40 times by some counts.  Mr. Tebow was arrested for felony drug charges multiple times and, in at least one instance, had attempted to smuggle contraband into the jail.  Although these facts would have authorized the booking officers to strip-search Mr. Tebow, they neglected to do so.  Consequently, Mr. Tebow successfully smuggled heroin into the jail.

After being booked, Mr. Tebow was assigned a cell with Mr. Batton.  Allegedly, Mr. Tebow offered heroin to another inmate, who declined.  Mr. Tebow then offered heroin to Mr. Batton.  Mr. Batton, who struggled with drug addiction, accepted the offer and was captured on video surveillance snorting a fatal amount of heroin in the late evening of August 11.

The following day, at approximately 10:45 a.m., Mr. Batton was found dead in his cell.  An autopsy report later attributed Mr. Batton's death to "[a]cute morphine intoxication (likely heroin)."  CP at 3.  As a result of Mr. Batton's death, Mr. Tebow pleaded guilty to controlled substance homicide on October 11, 2019.

---

[2] The Estate's amended summons and complaint mistakenly refer to Mr. Tebow as "Tim Tebow."  CP at 34.  However, other documents within the clerk's papers and the parties' briefings make clear that Mr. Tebow's first name is Jordan.

4

No. 38892-1-III
*Anderson v. Grant County*

PROCEDURE

In February 2022, Mr. Batton's parents, Barbara Anderson and Rod Batton, sued

Grant County[3] individually and as representatives of their son's estate. In their complaint

they alleged the County was negligent in its failure to adequately search Mr. Tebow, in

its failure to detect the presence of heroin in Mr. Batton's cell through adequate

supervision or video surveillance, and in its failure to discover and intervene in Mr.

Batton's overdose crisis before his death.

Grant County promptly filed a motion for summary judgment, asserting complete

immunity under the felony defense statute, RCW 4.24.420. Former RCW 4.24.420

(1987) provided:

> It is a complete defense to any action for damages for personal injury
> or wrongful death that the person injured or killed was engaged in the
> commission of a felony at the time of the occurrence causing the injury
> or death and the felony was a proximate cause of the injury or death.
> However, nothing in this section shall affect a right of action under
> 42 U.S.C. Sec. 1983.

The County further moved for partial summary judgment under RCW 5.40.060, averring

comparative fault. RCW 5.40.060 provides:

> (1) . . . [I]t is a complete defense to an action for damages for personal
> injury or wrongful death that the person injured or killed was under the
> influence of intoxicating liquor or any drug at the time of the occurrence
> causing the injury or death and that such condition was a proximate cause

---

[3] Initially, the Estate named various corrections officers as defendants, but later dismissed them according to a stipulated agreement.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38892-1-III
*Anderson v. Grant County*

of the injury or death and the trier of fact finds such person to have been more than fifty percent at fault.

RCW 4.24.420 was amended between the time of Mr. Batton's death and the time the Estate filed its amended complaint. Currently, RCW 4.24.420 (2021) provides:

(1) Except in an action arising out of law enforcement activities resulting in personal injury or death, it is a complete defense to any action for damages for personal injury or wrongful death that the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death.

(2) In an action arising out of law enforcement activities resulting in personal injury or death, it is a complete defense to the action that the finder of fact has determined beyond a reasonable doubt that the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death, the commission of which was a proximate cause of the injury or death.

(3) Nothing in this section shall affect a right of action under 42 U.S.C. Sec. 1983.

The County urged the trial court to apply the 1987 version of the statute and focused its argument on the definition of "occurrence." CP at 162. The Estate argued to the trial court that RCW 4.24.420 was wholly inapplicable to the facts of this case. If the trial court decided otherwise, the Estate sought application of the 2021 amendments.

If the trial court were to deny the County's motion for summary judgment dismissal under former RCW 4.24.420 (1987) or (2021), the County urged the court to grant it partial summary judgment under RCW 5.40.060. Specifically, the County argued the Estate had failed to produce evidence that Mr. Batton was not under the influence at

6

No. 38892-1-III
*Anderson v. Grant County*

the time of the occurrence causing his death, nor had it produced any evidence that such condition was not a proximate cause of his death. The County conceded a question of fact remained as to whether Mr. Batton was more than 50 percent at fault.

Regarding RCW 4.24.420, the trial court concluded that the 2021 amendments applied and, under subsection (2), it was for the trier of fact to determine the County's liability and percentage of fault. The court reasoned:

> The use of procedural statutes which destroy a plaintiff's right to petition the Court for redress should be used sparingly and only when the Court is convinced that no other option is appropriate. Here RCW 4.24.420(1) arguably doesn't apply due to plaintiff[']s allegation that "law enforcement activities" were a proximate cause of decedent's passing. Accordingly, the trier of fact, pursuant to subsection (2) of the statute, should determine "beyond a reasonable doubt" whether this defense is applicable. After making such a determination, the trier of fact should then determine what liability, if any, defendants have in this matter. Such a process will ensure that all parties get to make a complete record and [that] the issues extant in this case will be fully litigated.

CP at 184.

Following the trial court's decision, the County moved the court to clarify whether it could assert a defense under RCW 5.40.060. The court clarified "that Defendant[s] shall be permitted to avail themselves of the defense[s] set forth under RCW 5.40.060." CP at 222. It then granted the parties' joint motions for certification under RAP 2.3(b)(4). We accepted discretionary review to resolve three questions: (1) whether RCW 4.24.420 applies to the facts of this case; (2) if RCW 4.24.420 is applicable,

7

No. 38892-1-III
*Anderson v. Grant County*

whether the 2021 statutory amendments apply; and (3) whether the law, as enunciated in

the Supreme Court's holding in *Gregoire*, precludes the application of RCW 5.40.060.

While we accepted review of these three questions, including whether the special

relationship doctrine recognized in *Gregoire* precludes application of RCW 5.40.060, we

conclude that the special relationship doctrine applies to both RCW 4.24.420 and RCW

5.40.060. With this holding, we need not address the first two questions.

## ANALYSIS

The summary judgment procedure is designed to avoid the time and expense of an

unnecessary trial. *Maybury v. City of Seattle*, 53 Wn.2d 716, 719, 336 P.2d 878 (1959).

Orders on summary judgment are reviewed de novo. *Keck v. Collins*, 184 Wn.2d 358,

370, 357 P.3d 1080 (2015). In deciding a summary judgment motion, the court must

consider the evidence and all reasonable inferences from the evidence in the light most

favorable to the nonmoving party. *Id*. (citing *Folsom v. Burger King*, 135 Wn.2d 658,

663, 958 P.2d 301 (1998)). "[W]hen reasonable minds could reach but one conclusion,

questions of fact may be determined as a matter of law." *Hartley v. State*, 103 Wn.2d

768, 775, 698 P.2d 77 (1985) (citing *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299

(1975)). Summary judgment is appropriate only if there are no genuine issues of material

fact and the moving party is entitled to judgment as a matter of law. *Keck*, 184 Wn.2d at

No. 38892-1-III
*Anderson v. Grant County*

370. An appellate court may affirm summary judgment on any basis supported by the record. *Swinehart v. City of Spokane*, 145 Wn. App. 836, 844, 187 P.3d 345 (2008).

> WHETHER REVIEW OF *GREGOIRE*'S APPLICABILITY TO RCW 4.24.420
> IS PROPERLY BEFORE THIS COURT

At oral argument, the County urged us to refrain from considering whether the holding of *Gregoire* applies to RCW 4.24.420 as the issue is not overtly present in the order on discretionary review and was not raised before the trial court. The order on discretionary review calls on us to decide whether the Supreme Court's holding in *Gregoire* precludes the application of RCW 5.40.060. Nevertheless, the order is, at best, vague as it relates to whether we should decide *Gregoire*'s applicability to RCW 4.24.420.

In reviewing the entirety of the record, the briefing, and RAP 2.5(a), the question of *Gregoire*'s applicability to both statutes is properly before us. The issue was first presented to the trial court and is referenced in its order on summary judgment. Specifically, the trial court ordered:

> Plaintiffs' motion to expand consideration for review of RCW 4.24.420 in order to certify for review the decision of the Court that Defendants may avail themselves of the defense set forth in RCW 4.24.420 under the facts of the present case is GRANTED.

9

No. 38892-1-III
*Anderson v. Grant County*


CP at 221.  Moreover, the issue was raised by the Estate in its motion for discretionary

review, is referenced in our order granting discretionary review, and was briefed by the

Estate.  In its reply brief, the County declined to respond to the Estate's arguments.

RAP 2.5(a) permits a party to "present a ground for affirming a trial court decision

which was not presented to the trial court if the record has been sufficiently developed to

fairly consider the ground," especially in the context of a motion for summary judgment.

*Champagne v. Thurston County*, 134 Wn. App. 515, 520, 141 P.3d 72 (2006), *aff'd*, 163

Wn.2d 69, 178 P.3d 936 (2008).  Whether the holding in *Gregoire* applies to RCW

4.24.420 has been sufficiently developed in the record, was referenced by the trial court

in granting certification, and was briefed by the Estate.  The issue has been adequately

developed to permit our review.

WHETHER THE HOLDING IN *GREGOIRE* IS APPLICABLE TO RCW 4.24.420
AND RCW 5.40.060

A prima facie case of negligence requires plaintiffs to prove (1) duty, (2) breach,

(3) proximate causation, and (4) damages.  *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d

545, 552, 192 P.3d 886 (2008).  The first element, whether a duty was owed, is a question

of law reviewable de novo.  *Washburn v. City of Fed. Way*, 178 Wn.2d 732, 753, 310

P.3d 1275 (2013).  The remaining three elements are questions of fact.  *Wells v.*

*Nespelem Valley Elec. Coop., Inc.*, 13 Wn. App. 2d 148, 153, 462 P.3d 855 (2020) (citing

*Briggs v. Pacificorp*, 120 Wn. App. 319, 322, 85 P.3d 369 (2003)).

10

No. 38892-1-III
*Anderson v. Grant County*

In operating and maintaining a jail, the County "has a twofold duty: one to the public to 'keep and produce the prisoner when required,' and the other to the prisoner 'to keep him in health and safety.'" *Shea v. City of Spokane*, 17 Wn. App. 236, 242, 562 P.2d 264 (1977) (citing *Kusah v. McCorkle*, 100 Wash. 318, 323, 170 P. 1023 (1918)), *aff'd*, 90 Wn.2d 43, 578 P.2d 42 (1978). The County's duty to the public and prisoner may arise from statute, ordinance, case law, or common law tort principles. *See* chapter 70.48 RCW; WAC 289-02-010 to WAC 289-30-060. The duty the County owes incarcerated individuals in its facilities is based on the special relationship between the jail and inmate because an incarcerated individual is deprived of their liberty and ability to care for themselves. *Shea*, 17 Wn. App. at 241-42; *Gregoire*, 170 Wn.2d at 635 (lead opinion). The special relationship creates a nondelegable duty for the jail to ensure the health, welfare, and safety of each inmate. *Shea*, 17 Wn. App. at 242. A County has an affirmative duty to protect those incarcerated in its facility. *Gregoire*, 170 Wn.2d at 638 (lead opinion).

Acknowledging the special relationship between the County and Mr. Batton, the parties debate *Gregoire*'s holding. In *Gregoire*, the decedent exhibited symptoms of emotional distress on his arrest and in the moments leading up to his suicide, including pleading with officers to kill him. 170 Wn.2d at 631-32 (lead opinion). In a plurality decision, the Washington Supreme Court overturned the trial court's verdict in favor of

11

No. 38892-1-III
*Anderson v. Grant County*

the city of Oak Harbor, explaining that the trial court should not have instructed the jury on the defenses of assumption of risk and comparative fault.[4] *Id.* at 641. Justice Sanders' opinion primarily governed the assumption of risk analysis, and Justice Madsen's opinion controlled the comparative fault[5] analysis.

Justice Sanders explained that jails and their employees share a "special relationship with inmates," including the affirmative "duty to ensure health, welfare, and safety." *Id.* at 635 (lead opinion). As such, he determined that the assumption of risk

---

[4] The *Gregoire* opinion referred to this doctrine as "contributory negligence." Still, it acknowledged that Washington abolished the doctrine of contributory negligence in favor of a comparative fault scheme and explained that it continued to refer to the doctrine as contributory negligence for consistency. 170 Wn.2d at 633-34 n.1 (lead opinion).

[5] "[W]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *State v. Hickman*, 157 Wn. App. 767, 774, 238 P.3d 1240 (2010) (alteration in original) (quoting *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977)); *see also Kitsap All. of Prop. Owners v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 152 Wn. App. 190, 197, 217 P.3d 365 (2009), *vacated on remand*, 160 Wn. App. 250, 255 P.3d 696 (2011). Applying this to the *Gregoire* holdings: (1) the opinion by Justice Sanders that jails have a special relationship with inmates, including the positive duty to provide for their health, safety, and welfare, which cannot be waived by assumption of risk, was joined by Justices Charles Johnson, Chambers, Stephens, Madsen, James Johnson, and Owens, whereas (2) the opinion by Justice Madsen that jails have no affirmative duty to prevent an inmate's self-inflicted harm such that the defense of contributory negligence may apply absent proof of the jail's undertaking of self-inflicted harm was joined by Justices James Johnson, Owens, Alexander, and Fairhurst. *See Gregoire*, 170 Wn.2d at 655 n.17 (Alexander, J., dissenting). This comports with other jurisdictions' understanding of *Gregoire*. *See, e.g.*, *Mulhern v. Cath. Health Initiatives*, 799 N.W.2d 104, 115 (Iowa 2011).

12

No. 38892-1-III
*Anderson v. Grant County*

doctrine, and specifically the category of implied primary assumption of risk, could not serve as a complete defense against the decedent's claims. Justice Sanders cited a judicial "reluctan[ce] to allow jailers charged with a public duty to shed it through a prisoner's purported implied consent to assume a risk, especially in a context where jailers exert complete control over inmates." *Id.* at 638 (lead opinion).

Justice Madsen agreed with Justice Sanders' assumption of risk analysis and added that the duty to care for inmates' health included the requirement to "protect an inmate from injury by third parties and jail employees." *Id.* at 645 (Madsen, J., concurring/dissenting). However, she departed from Justice Sanders' conclusion (and, in doing so, garnered a weak plurality) that jails bore an automatic affirmative duty to protect an inmate from self-inflicted harm and that the defense of contributory negligence may be asserted absent proof that the jail assumed an affirmative duty to prove self-inflicted harm. *Id.* at 649 (Madsen, J., concurring/dissenting). Thus, under *Gregoire*, whether a jail assumed a duty to protect an inmate from self-inflicted harm precluding the defense of contributory negligence remained a question for the trial court to decide. *Id.* at 654-55 (Madsen, J., concurring/dissenting).

However, our analysis of a jail's affirmative duties cannot end with *Gregoire*. *See Norg v. City of Seattle*, 200 Wn.2d 749, 760-61, 522 P.3d 580 (2023) ("'[T]he first rule of case law as well as statutory interpretation is: Read on.'" (quoting *Ark. Game & Fish*

13

No. 38892-1-III
*Anderson v. Grant County*

*Comm'n v. United States*, 568 U.S. 23, 36, 133 S. Ct. 511, 184 L. Ed. 2d 417 (2012))).

The Supreme Court reversed course in *Hendrickson v. Moses Lake School District*, 192 Wn.2d 269, 428 P.3d 1197 (2018). In *Hendrickson*, the Supreme Court considered an injured student's contributory negligence claim against her school district. In doing so, it explicitly adopted Justice Sanders' view on contributory negligence in the context of self-harm, writing:

> We also held that a prison *may not* assert a defense of contributory negligence in situations of inmate suicide. *Gregoire*, 170 Wn.2d at 631. We reasoned that "the injury-producing act—here, the suicide—is the very condition for which the duty [to protect the inmate] is imposed." *Id.* at 641. Thus, any instruction on an inmate's contributory negligence would absolve a prison of its duty to protect that inmate from injuring him- or herself. *Id.* at 643-44. This de facto immunization from liability for inmate suicide was "unsupportable from a policy perspective."

*Id.* at 285-86 (emphasis added) (alteration in original); *see also Ghodsee v. City of Kent*, 21 Wn. App. 2d 762, 770, 508 P.3d 193 (2022), *review granted*, 1 Wn.3d 1001, 526 P.3d 852 (2023) (court order). The Supreme Court's holding in *Hendrickson* effectively resolved any confusion over the original holdings in *Gregoire*. Allowing a jail to shed its duty to protect an inmate through the inmate's purported assumption of the risk or comparative fault violates public policy.

### *GREGOIRE*'S APPLICATION TO RCW 4.24.420

The County asserted complete immunity under RCW 4.24.420—a defense predicated on an assumption of the risk. The County contends Mr. Batton assumed the

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38892-1-III
*Anderson v. Grant County*

risk that led to his death when he unlawfully possessed a controlled substance while incarcerated (in violation of RCW 9.94.041(2)). Allowing the County to forsake its duty because Mr. Batton acted in a manner that the jail was required to protect him from is "unsupportable from a policy perspective." *Gregoire*, 170 Wn.2d at 643-44 (lead opinion). Anything short of requiring a jail to protect its inmates from a reasonably foreseeable self-injury would render a jail's duty meaningless. *Id*. at 639 (lead opinion) (citing *Hunt v. King County*, 4 Wn. App. 14, 22-23, 481 P.2d 593 (1971)). The County's duty to protect Mr. Batton included the duty to thwart the entry of controlled substances into its facility. Otherwise stated, but for the County's failure to properly search Mr. Tebow, Mr. Batton would have lacked the opportunity to violate RCW 9.94.041(2).

### *GREGOIRE* IS APPLICABLE TO RCW 5.40.060

In addition to asserting complete immunity, the County also raised a comparative fault defense under RCW 5.40.060. The County argues there are no genuine issues of material fact related to two of the three elements of RCW 5.40.060, entitling it to partial summary judgment. The County claims it is undisputed that Mr. Batton was intoxicated at the time of the occurrence causing his death and that intoxication was the proximate cause of his death. As to the element of apportionment of fault, the County concedes that a question of fact remains. RCW 5.40.060(1); *see Hickly v. Bare*, 135 Wn. App. 676, 688, 145 P.3d 433 (2006).

15

No. 38892-1-III
*Anderson v. Grant County*

In response, the Estate does not contest the constitutionality of RCW 5.40.060, nor its applicability in a typical civil case. Rather, the Estate contends the holding of *Gregoire* precludes the County from escaping its duty to Mr. Batton through the apportionment of fault, thereby rendering RCW 5.40.060 inapplicable. Indeed, "[t]he jail's duty to protect inmates includes protection from self-inflicted harm and, in that light, contributory negligence has no place in such a scheme." *Gregoire*, 170 Wn.2d at 641 (lead opinion).

The County attempts to distinguish *Gregoire*, arguing Gregoire was a suicidal inmate, whereas here, the County lacked knowledge that Mr. Batton had an addiction and could overdose if presented with the opportunity. Initially, it is unclear what material difference exists between an inmate's suicide by hanging and an inmate's overdose on drugs smuggled into the jail. Perhaps an overdose is accidental rather than intentional, but that overlooks the fact that we do not know whether Mr. Batton intentionally or accidentally overdosed. Moreover, we must account for the fact that both a person with an addiction and one suffering from mental illness may lack the ability to account for all the risks and consequences that follow acts of self-harm.

Even putting the issue of self-harm aside, there is a colorable argument that the jail was negligent in failing to provide for its inmates' health and safety by allowing Mr. Tebow to enter the facility with controlled substances. Given Mr. Tebow's historical

16

No. 38892-1-III
*Anderson v. Grant County*

interactions with corrections officers and the County's recognition of drugs being introduced into the jail, its affirmative "duty to ensure health, welfare, and safety" of inmates was particularly acute. *Id.* at 635 (lead opinion). As such, public policy precludes the County from shedding its duty to Mr. Batton by asserting RCW 5.40.060 as a defense.

Finally, the County attempts to distinguish *Gregoire* because, here, the contributory negligence defense is based on a statute (RCW 5.40.060), whereas in *Gregoire*, it was grounded in the common law. As the Estate correctly noted, however, the contributory fault scheme is codified at RCW 4.22.005; thus, any distinction between a statutory defense and one grounded in the common law is negligible. *Id.* at 633 n.1 (lead opinion).

## CONCLUSION

As an inmate in its jail, the County possessed complete control over Mr. Batton's liberty. This created a special relationship wherein the County owed a nondelegable affirmative duty to protect Mr. Batton from harm and ensure his health, welfare, and safety. Allowing the County to advance the defenses of complete immunity under RCW 4.24.420 or comparative fault under RCW 5.40.060, would nullify the County's duty to protect Mr. Batton. Accordingly, we affirm the trial court's denial of the County's

17

No. 38892-1-III
*Anderson v. Grant County*

motion for summary judgment of the Estate's claims and remand for further proceedings consistent with this opinion.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Staab, J.

18